Opinion for the Court filed by Circuit Judge BROWN.
Opinion concurring in the judgment filed by Circuit Judge GARLAND.
Concurring opinion filed by Circuit Judge BROWN.
BROWN, Circuit Judge:
OSHA cited and fined petitioner, Volks Constructors, for failing to properly record certain workplace injuries and for failing to properly maintain its injury log between January 2002 and April 2006. OSHA issued the citations in November 2006, which was, as Volks points out, at least six months after the last unrecorded injury occurred. Because “[n]o citation may be issued ... after the expiration of six months following the occurrence of any violation,” 29 U.S.C. § 658(c), we agree with Volks that the citations are untimely and should be vacated.
I
The Occupational Safety and Health Act (“OSH Act” or “Act”) provides that “[ejach employer shall make, keep and preserve” records of workplace injuries and illnesses “as the Secretary ... may prescribe by regulation.” 29 U.S.C. § 657(c)(1). Pursuant to that delegated authority, the Secretary has promulgated a set of regulations which require employers to record information about work-related injuries and illnesses in three ways. Employers must prepare an incident report and a separate injury log “within seven (7) calendar days of receiving information that a recordable injury or illness has occurred,” 29 C.F.R. § 1904.29(b)(3), and must also prepare a year-end summary report of all recordable injuries during the calendar year, id. § 1904.32(a)(2). This year-end summary must be certified by a “company executive.” Id. § 1904.32(b)(3). The employer “must save” all of these documents for five years from the end of the calendar year those records cover. Id. § 1904.33(a).
On May 10, 2006, OSHA began an inspection of Volks and discovered that Volks had not been diligent in completing its logs, forms, and summaries between 2002 and early 2006. Accordingly, on November 8, 2006, OSHA issued the set of citations at issue in this case. OSHA fined Volks a total of $13,300 for 67 violations of 29 C.F.R. § 1904.29(b)(2) — incident report forms were incomplete, 102 violations of 29 C.F.R. § 1904.29(b)(3) — injuries were not entered in the log, one violation of 29 C.F.R. § 1904.32(a)(1) — year-end reviews were not conducted between 2002 and 2005, and one violation of 29 C.F.R. § 1904.32(b)(3) — the wrong person certified the year-end summary.[1] The improperly recorded injuries occurred between January 11, 2002 at the earliest and April 22, 2006 at the latest. These dates are equivalent to a maximum of 54 months before the issuance of the citation, and a minimum of six months plus ten days before the issuance of the citation. Volks was not cited for any violation of the requirement in 29 C.F.R. § 1904.33(a) that it “save” the forms and the log for five years.
*754 Because the Act says that “[n]o citation may be issued ... after the expiration of six months following the occurrence of any violation,” 29 U.S.C. § 658(c), and because the injuries giving rise to recording failures took place more than six months before the issuance of the citation, Volks moved to dismiss these citations as untimely. After the OSHA ALJ affirmed the citations, Volks appealed to the Occupational Safety and Health Review Commission (OSHRC). The Secretary said all the violations for which Volks was cited are “continuing violations” that prevent the statute of limitations from expiring until the end of the five-year document retention period in 29 C.F.R. § 1904.33(a). Therefore, the Secretary argued, all of Volks’s violations, stretching as far back as January of 2002, were still occurring on May 10, 2006 when the inspection began. The citations were issued two days shy of six months later than that date, so the Secretary argued they were timely. By a 2-1 vote, and over the vigorous dissent of the minority Commissioner, the Commission agreed with the Secretary and affirmed the citations. AKM LLC, 23 BNA OSHC 1414 (No. 06-1990, 2011) (“Commission Decision ”). This petition for review followed.
II
The question in this case is whether the Act’s record-keeping requirement, in conjunction with the five-year regulatory retention period, permits OSHA to subvert the Act’s six-month statute of limitations.
Because the Secretary of Labor has interpreted the Act and her regulations to pretermit the Act’s statute of limitations, we first determine whether we must defer to her interpretation. Generally, the answer is yes so long as the statutes and regulations in question are ambiguous and the Secretary’s interpretations are reasonable. See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); Christensen v. Harris Cnty., 529 U.S. 576, 588, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000). This is so even if the Secretary’s interpretation arises in an administrative adjudication rather than in a formal rulemaking process. Martin v. OSHRC, 499 U.S. 144, 157, 111 S.Ct. 1171, 113 L.Ed.2d 117 (1991) (“[T]he Secretary’s litigating position before the Commission is as much an exercise of delegated lawmaking powers as is the Secretary’s promulgation of a workplace health and safety standard.”); see Auer v. Robbins, 519 U.S. 452, 462, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997) (holding that the Secretary’s interpretation of regulations receives deference even if contained in a brief).
Since the method by which the Secretary’s interpretation has been articulated in this case places it within the ambit of our deference, the next question is whether the interpretation of a statute of limitations is the type of question which triggers our deference. We have recently suggested that, in at least some circumstances, agency interpretations of statutes of limitations do trigger Chevron deference. Intermountain Ins. Serv. of Vail v. Comm’r, 650 F.3d 691, 707 (D.C.Cir.2011). Because we find this statute to be clear and the agency’s interpretation unreasonable in any event, infra, we need not and do not decide now that this case presents the same circumstances as Intermountain or that deference to agency interpretations of statutes of limitations is warranted as a rule. Rather, we assume without deciding that Chevron deference is available because the interpretation offered by the agency here “cannot survive even with the aid of Chevron deference.” Kennecott *755 Utah Copper Corp. v. Dep’t of Interior, 88 F.3d 1191, 1210 (D.C.Cir.1996).
Ill
We thus begin with the text of the statute. If Congress has clearly expressed its will, our inquiry is at an end. Chevron, 467 U.S. at 843, 104 S.Ct. 2778. We think the statute is clear; the citations are untimely.
The statute of limitations provides that “no citation may be issued ... after the expiration of six months following the occurrence of any violation.” 29 U.S.C. § 658(c). Like the Supreme Court, we think the word “occurrence” clearly refers to a discrete antecedent event — something that “happened” or “came to pass” “in the past.” Nat’l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109-10 & n. 5, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) (citing dictionaries); see Black’s Law Dictionary 1080 (6th ed.1990) (defining “occurrence” as “a coming or happening[;] [a]ny incident or event”); Webster’s Third New Int’l Dictionary 1561 (1981) (defining “occurrence” as “something that takes place” and noting that it is a term that “lacks much connotational range” for which synonyms are “incident, episode, [or] event”).[2] In this case, every single violation for which Volks was cited — failures to make and review records — and every workplace injury which gave rise to those unmet recording obligations were “incidents” and “events” which “occurred” more than six months before the issuance of the citations. As the dissenting Commissioner stated in this case, “[b]y any common definition, there [was] no ‘occurrence,’ i.e., no discrete action, event, or incident, no coming about, and no process of happening, within the requisite six months.” Commission Deeision, at *18 (Thompson, Comm’r, dissenting). We agree.
The Secretary does not offer any other definition of “occurrence” but instead heroically attempts, as the dissenting Commissioner put it, to “tie this straightforward issue into a Gordian knot.” Id. at *17. The Secretary argues such violations continue every day that an unmet record-keeping obligation remains unsatisfied. Because the statute also requires that “each employer shall make, keep and preserve” those records as the Secretary prescribes, 29 U.S.C. § 657(c), and the Secretary has prescribed that work injuries be recorded “within seven (7) calendar days” of an incident report, 29 C.F.R. § 1904.29(b)(3), and those records be retained for five years, id. § 1904.33(a), the Secretary concludes the real statute of limitations for record-making violations is the length of the agency’s record retention period plus the limitations period Congress proposed — here, five years beyond the six months stated in Section 658(c).
Despite the cloud of dust the Secretary kicks up in an effort to lead us to her interpretation, the text and structure of the Act reveal a quite different and quite clear congressional intent that requires none of the strained inferences she urges upon us. To the extent Congress delegated authority to the Secretary to require employers to “make, keep and preserve,” records in Section 657(c), it did so only within the ambit set by the statutory scheme, including the limitations period in Section 658(c) — which expressly applies to “any regulations prescribed pursuant to this chapter,” such as those promulgated pursuant to Section 657(c). 29 U.S.C. § 658(a). On the one hand, employers *756 must make records of workplace injuries in whatever form the Secretary requires within the time period established by the Secretary — here, seven days after the injury. If they fail to do so, that is a violation. Pursuant to Section 658(c), OSHA may cite employers for violations within six months of the violation’s occurrence. If an injury is reported on May 1, OSHA can cite an employer for the failure to create a record beginning on May 8, and a citation issued within the following six months, and only the following six months, would be valid. On the other hand, once an employer has made such a record, it must also retain it for as long as the Secretary demands and in the forms the Secretary requires — here, for five years. If it loses or destroys a record before the end of that time period, that too is a violation. Pursuant to Section 658(c), OSHA may cite employers for violations within six months of a violation’s occurrence, so for six months after the fifth year, and only for those six months, OSHA can cite an employer for the loss or destruction of a record. In this case, OSHA did not cite Volks for the loss or destruction of a record it never made, as much as the Secretary would now like to rely on that metaphysically impossible failure on Volks’s part to extend the timeliness of other citations. OSHA only cited Volks for the failure to create a record, but it did so far too late.
The Secretary’s interpretation of these two provisions, by contrast, has several flaws. First, it leaves little room for Section 658(c), and we must be “hesitant to adopt an interpretation of a congressional enactment which renders superfluous another portion of that same law.” United States v. Jicarilla Apache Nation, — U.S. —, 131 S.Ct. 2313, 2330, 180 L.Ed.2d 187 (2011). At best, the Secretary’s approach diminishes Section 658(c) to a mere six-month addition to whatever retention/limitations period she desires. We do not believe Congress expressly established a statute of limitations only to implicitly encourage the Secretary to ignore it. See Whitman v. Am. Trucking Ass’ns, Inc., 531 U.S. 457, 468, 121 S.Ct. 903, 149 L.Ed.2d 1 (2001) (“Congress, we have held, does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions — it does not, one might say, hide elephants in mouse-holes.”). Second, the Secretary’s interpretation incorrectly assumes that the obligation to maintain an existing record expands the scope of an otherwise discrete obligation to make that record in the first place. But the two obligations are distinct: one cannot keep what never existed; a company cannot retain a record it never created. See Bd. of Trs. of Leland Stanford Jr. Univ. v. Roche Molecular Sys., Inc., — U.S. —, 131 S.Ct. 2188, 2197, 180 L.Ed.2d 1 (2011) (noting that “retain” means “to hold or continue to hold in possession or use,” which in turn means “[y]ou cannot retain something unless you already have it”).[3]
Third, the Secretary essentially asks us to conclude that the mere authorization to issue regulations governing the creation and preservation of records justifies an inference that Congress intended violations of record-making requirements to be treated as continuing violations. The Secretary’s reasoning is not persuasive enough to overcome the “standard rule” that the limitations period is triggered by *757 the existence of a complete cause of action, “[u]nless Congress has told us otherwise in the legislation at issue.” See Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp., 522 U.S. 192, 201, 118 S.Ct. 542, 139 L.Ed.2d 553 (1997); Cherosky v. Henderson, 330 F.3d 1243, 1248 (9th Cir.2003) (“The Supreme Court has made clear ... that the application of the continuing violations doctrine should be the exception, rather than the rule.”). Moreover, we are especially skeptical of the Secretary’s inference when Volks’s conduct is not even the sort of conduct we generally view as giving rise to a continuing violation. As we have held, continuing violations are those whose “character as a violation did not become clear until [they] w[ere] repeated during the limitations period, typically because it is only [the] cumulative impact ... that reveals [their] illegality.” Taylor v. FDIC, 132 F.3d 753, 765 (D.C.Cir.1997). The illegality of Volks’s conduct would be immediately apparent to an OSHA administrator. Without a clearer directive, we cannot presume Congress intended to depart from the general rule.
The Secretary’s interpretation also runs afoul of our precedents. Her approach would stitch the retention and creation obligations into one continuing obligation, but we have stated in no uncertain terms that the “lingering effect of an unlawful act is not itself an unlawful act,” Felter v. Kempthorne, 473 F.3d 1255, 1260 (D.C.Cir. 2007), and that the “mere failure to right a wrong ... cannot be a continuing wrong which tolls the statute of limitations,” for if it were, “the exception would obliterate the rule,” Fitzgerald v. Seamans, 553 F.2d 220, 230 (D.C.Cir.1977). See also Lorance v. AT&T Techs., Inc., 490 U.S. 900, 908, 109 S.Ct. 2261, 104 L.Ed.2d 961 (1989) (“[A] claim ... wholly dependent on ... conduct occurring well outside the period of limitations ... cannot [support] a continuing violation.”); Local Lodge No. 1424 v. NLRB, 362 U.S. 411, 422, 80 S.Ct. 822, 4 L.Ed.2d 832 (1960) (holding that “a finding of violation which is inescapably grounded on events predating the limitations period” is untimely); Chalabi v. Hashemite Kingdom of Jordan, 543 F.3d 725, 730 (D.C.Cir. 2008) (concluding that an “ongoing failure to return ... wrongfully seized property” cannot toll the statute of limitations); Kyriakopoulos v. George Washington Univ., 866 F.2d 438, 448 (D.C.Cir.1989) (“Any ... action that merely declines to remedy [a] breach, so long as that action independently breaches no [other provision], gives rise to no [separate] action.”). The mere requirement to save a record cannot possibly impose a continuing affirmative duty to correct past failures to make the record in the first place.
It is telling that in order to find supportive circuit law, the Secretary resorts to modifying a quotation which, properly quoted, is perfectly consistent with our conclusion.[4] The Secretary says, “this Court has previously found that a statute *758 of limitations will not operate to bar claims where the action (or inaction) that constitutes the basis for a claim was ‘carried forward by more recent actions [or inactions].’ ” Resp’t Br. at 39 (quoting Int’l Union, United Auto., Aerospace & Agric. Implement Workers v. NLRB, 363 F.2d 702, 706-07 (D.C.Cir.1966)). But that bracketed addition makes all the difference, and is simply not present in the decision. While we held that continued actions may extend the statute of limitations, nothing in that case suggests that inaction has the same effect, and this case is about inactions (hence the need for the Secretary’s addition). In short, the Secretary’s continuing violations theory would transform the failure to right a past wrong into a reason not to start the limitations clock — a result our precedents plainly proscribe.
Of course, where, for example, a company continues to subject its employees to unsafe machines, Resp’t Br. at 26-27, or continues to send its employees into dangerous situations without appropriate training, Oral Arg. Recording at 30:50, OSHA may be able to toll the statute of limitations on a continuing violations theory since the dangers created by the violations persist. But the Secretary’s argument here is instead grounded on the faulty logic that the mere existence of a statutory provision authorizing her to require employers to make and keep records, 29 U.S.C. § 657(c), creates a continuing obligation that expands the statute of limitations. In rejecting that argument, we express no opinion on whether some other violations, if any, could, for some other reason, be extended by the continuing violations concept. See Postow v. OBA Fed. Savings & Loan Ass’n, 627 F.2d 1370, 1380 n. 22 (D.C.Cir.1980) (interpreting a statute of limitations to allow for a continuing violations theory in some circumstances, but not all, and suggesting the theory would in any event not allow a violation to continue “indefinitely after the transaction was consummated”). Instead, we simply conclude that the statutory language in Section 657(c) which deals with record-keeping is not authorization for OSHA to cite the employer for a record-making violation more than six months after the recording failure. See Chalabi, 543 F.3d at 730; Fitzgerald, 553 F.2d at 230.
Indeed, the Secretary’s interpretation has absurd consequences in the context of the discrete record-making failure in this case. Under her interpretation, the statute of limitations Congress included in the Act could be expanded ad infinitum if, for example, the Secretary promulgated a regulation requiring that a record be kept of every violation for as long as the Secretary would like to be able to bring an action based on that violation. There is truly no end to such madness. If the record retention regulation in this case instead required, say, a thirty-year retention period, the Secretary’s theory would allow her to cite Volks for the original failure to record an injury thirty years after it happened. Counsel for the Secretary readily conceded as much at oral argument. Oral Arg. Recording at 23:22-25:30. We cannot believe Congress intended or contemplated such a result. Congress’s aim in creating OSHA was to improve the safety of America’s workplaces. See 29 U.S.C. § 651(b). Congress evidently thought this goal would be served by mandating that OSHA enforce record-making violations swiftly or else forfeit the chance to do so, as reflected in its requirement that citations not issue later than six months after a violation.[5] *759 Cf. Mohasco Corp. v. Silver, 447 U.S. 807, 825, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980) (“By choosing what are obviously quite short deadlines, Congress clearly intended to encourage the prompt [pursuit] of all charges____”). Nothing in the statute suggests Congress sought to endow this bureaucracy with the power to hold a discrete record-making violation over employers for years, and then cite the employer long after the opportunity to actually improve the workplace has passed. “An interpretation of a statute purporting to set a definite limitation upon the time of bringing action, without saving clauses, which would, nevertheless, leave defendants subject indefinitely to actions for the wrong done, would, we think, defeat its obvious purpose.” Reading Co. v. Koons, 271 U.S. 58, 65, 46 S.Ct. 405, 70 L.Ed. 835 (1926). It is not for us or the Secretary to unsettle Congress’s chosen means of ensuring that outcome.
IV
The Act clearly renders the citations untimely, and the Secretary’s argument to the contrary relies on an interpretation that is neither natural nor consistent with our precedents. The petition for review is granted and the citations are'vacated.
So ordered.

. OSHA issued a fifth citation for failing to post the year-end summary for a long enough time period in 2006, but this item was unanimously vacated by the Occupational Safety and Health Review Commission (OSHRC) and is not before this Court.

. The Secretary attempts to distinguish Morgan on the grounds that it is a Title VII case, Resp't Br. at 25, but the Court's reasoning on this point in Morgan did not rely on any peculiarity of Title VII. 536 U.S. at 109-10, 122 S.Ct. 2061.

. That OSHA did not cite Volks for a failure to retain injury records when that is the only conduct for which the statute of limitations would not have clearly expired suggests that OSHA had, at some point, correctly understood that an unmade record cannot be said to have not been retained and that an employer's obligations with respect to making and keeping records are distinct.

. The Secretary also relies on three inapposite cases. The first, United States v. Cores, 356 U.S. 405, 408-09, 78 S.Ct. 875, 2 L.Ed.2d 873 (1958), addressed the concept of continuing offenses for the purposes of venue and not statutes of limitations, a distinction described as "obvious[],” United States v. Reitmeyer, 356 F.3d 1313, 1323 (10th Cir.2004) (citing Toussie v. United States, 397 U.S. 112, 121 n. 16, 90 S.Ct. 858, 25 L.Ed.2d 156 (1970)). The second, Sierra Club v. Simkins Indus., Inc., 847 F.2d 1109, 1114-15 (4th Cir. 1988), discussed whether past conduct could give rise to citizen suits under the Clean Air Act, but said nothing about statutes of limitations. The last, Wilderness Soc’y v. Norton, 434 F.3d 584, 588 (D.C.Cir.2006), held that an agency’s failure to act constituted a continuing violation, but this was in the context of our mandamus jurisdiction. Mandamus is altogether different than ordinary rights of action, as we explained in that very case. Id.

. If the Secretary feels this limitations period is too short to allow for the discovery of unsafe conditions or health effects which may not become apparent for months or years into *759 the future, she could argue the statute should be read to incorporate a discovery rule, as she had before the OSHA ALJ. But she did not press that argument before the Commission, Commission Decision, at *6, or here.