# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued October 16, 2012      Decided December 28, 2012

No. 11-7078

VERNON NORMAN EARLE,
APPELLANT

v.

DISTRICT OF COLUMBIA,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:06-cv-00072)

———

*Dominic F. Perella* argued the cause for the appellant. *Peter S. Spivack, Sean Marotta* and *Jonathan B. Skowron* were on brief.

*James C. McKay Jr.*, Senior Assistant Attorney General, Office of the Attorney General for the District of Columbia, argued the cause for the appellee. *Irvin B. Nathan*, Attorney General, *Todd S. Kim*, Solicitor General, and *Donna M. Murasky*, Deputy Solicitor, were on brief.

Before: HENDERSON and GARLAND, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: Appellant Vernon Earle (Earle) alleges that the District of Columbia (District) violated rights conferred upon him by Article 36(1)(b) of the Vienna Convention on Consular Relations, Apr. 24, 1963, 21 U.S.T. 77, 101, 596 U.N.T.S. 261 (VCCR). Assuming without deciding that Article 36(1)(b) confers individually enforceable rights actionable under 42 U.S.C. § 1983, we conclude that Earle's suit is untimely. We therefore affirm the district court's grant of summary judgment to the District.

I

A.

"The Vienna Convention was drafted in 1963 with the purpose, evident in its preamble, of 'contribut[ing] to the development of friendly relations among nations, irrespective of their differing constitutional and social systems.' " *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 337 (2006) (quoting 21 U.S.T. at 79). To achieve the purpose established in its preamble, the VCCR's seventy-nine articles regulate the relationships among consular officers, the appointing state and the receiving state. *See* LUKE T. LEE, CONSULAR LAW AND PRACTICE 23–27 (2d ed. 1991). The United States ratified the VCCR in 1969 and, as of 2006, 170 countries were parties thereto. *Sanchez-Llamas*, 548 U.S. at 337–38 (citing 21 U.S.T. at 77). The United States also ratified the Optional Protocol Concerning the Compulsory Settlement of Disputes, Apr. 24, 1963, 21 U.S.T. 325, 596 U.N.T.S. 487 (Optional Protocol), in 1969. The Optional Protocol conferred compulsory jurisdiction on the International Court of Justice to resolve disputes regarding the interpretation and application of the VCCR. 21 U.S.T. at 326. The United States withdrew from

the Optional Protocol in 2005. *Sanchez-Llamas*, 548 U.S. at 368.

In his appeal, Earle contends that the District failed to comply with obligations imposed on it by Article 36 of the VCCR. Article 36(1) provides in pertinent part:

(b) if he so requests, the competent authorities of the receiving State shall, without delay, inform the consular post of the sending State if, within its consular district, a national of that State is arrested or committed to prison or to custody pending trial or is detained in any other manner. Any communication addressed to the consular post by the person arrested, in prison, custody or detention shall also be forwarded by the said authorities without delay. The said authorities shall inform the person concerned without delay of his rights under this sub-paragraph.

VCCR, 21 U.S.T. at 101.[1] Subparagraph (b) imposes three obligations on the "competent authorities of the receiving

---

[1] Article 36 states in its entirety:

1. With a view to facilitating the exercise of consular functions relating to nationals of the sending State:

(a) consular officers shall be free to communicate with nationals of the sending State and to have access to them. Nationals of the sending State shall have the same freedom with respect to communication with and access to consular officers of the sending State;

(b) if he so requests, the competent authorities of the receiving State shall, without delay, inform the consular post of the sending State if, within its consular district, a national of that State is arrested or committed to prison or to custody

State" after they detain a foreign national: (1) if requested by the foreign national, they must notify the consular post of the foreign national's country of the fact of his detention; (2) they must forward communications from the foreign national to the consular post "without delay"; and (3) they must notify "without delay" the foreign national of his right to contact the consular post.

---

pending trial or is detained in any other manner. Any communication addressed to the consular post by the person arrested, in prison, custody or detention shall also be forwarded by the said authorities without delay. The said authorities shall inform the person concerned without delay of his rights under this sub-paragraph;

(c) consular officers shall have the right to visit a national of the sending State who is in prison, custody or detention, to converse and correspond with him and to arrange for his legal representation. They shall also have the right to visit any national of the sending State who is in prison, custody or detention in their district in pursuance of a judgment. Nevertheless, consular officers shall refrain from taking action on behalf of a national who is in prison, custody or detention if he expressly opposes such action.

2. The rights referred to in paragraph 1 of this Article shall be exercised in conformity with the laws and regulations of the receiving State, subject to the proviso, however, that the said laws and regulations must enable full effect to be given to the purposes for which the rights accorded under this Article are intended.

VCCR, 21 U.S.T. at 100–01.

B.

Earle is a national of Jamaica and currently incarcerated in a federal penitentiary. On June 13, 1985, officers of the Metropolitan Police Department arrested Earle pursuant to a warrant charging him with "Assault with Intent to Kill while Armed." Joint Appendix (JA) 34. Earle was convicted in District Superior Court of, *inter alia*, first-degree murder and, on October 22, 1987, sentenced to two consecutive terms of twenty years to life imprisonment. He was originally incarcerated in the Lorton Correctional Complex in Fairfax County, Virginia, in the custody of the District Department of Corrections. On September 19, 1988, he escaped from custody and remained at large until he was recaptured by deputies of the United States Marshals Service (USMS) on March 7, 1989. At no point from his initial arrest in 1985 until 2004 was Earle informed of his consular access rights[2] under the VCCR.

Earle apparently first become aware of his consular access rights in 2004, although the record does not disclose how he came to be aware of those rights. In 2006, he sued the District and federal defendants under 42 U.S.C. § 1983 for violating their VCCR disclosure obligations.[3] The district court

---

[2] In addition to the disclosure obligations at issue, we assume *arguendo* that Article 36(1)(b) grants two substantive rights to a detained foreign national: the right to have his consulate informed of his detention by "competent authorities" (right of consular notification) and the right to have his communications forwarded to his consulate (right of consular communication). We refer to these rights collectively consular access rights.

[3] Section 1983 applies to a violation of "rights . . . secured by the Constitution and laws" of the United States by any person acting under color of law "of any State or Territory or the District of

dismissed the complaint as untimely filed. We reversed and instructed the district court to consider, *inter alia*, whether D.C. Code § 12-302(a)(3)[4] tolled the statute of limitations. *Earle v. Washington D.C. Police Dep't*, 298 Fed. App'x 10, 11 (D.C. Cir. 2008) (per curiam).[5]

Earle filed an amended complaint against the District on November 9, 2009.[6] The district court granted summary judgment to the District on three grounds. First, it held that even if D.C. Code § 12-302(a)(3) tolled the statute of limitations during Earle's imprisonment, the tolling ceased when Earle escaped and did not recommence upon his

Columbia." 42 U.S.C. § 1983. Earle's action against the federal defendants—the United States Attorney, the Immigration and Naturalization Service and the Department of Justice—arises under *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). The federal defendants are not before us and so we treat only Earle's section 1983 claim.

[4] D.C. Code § 12-302(a)(3) provides, in pertinent part: "[W]hen a person entitled to maintain an action is, at the time the right of action accrues . . . (3) imprisoned . . . he or his proper representative may bring action within the time limit after the disability is removed."

[5] We informed the district court that it might also consider how, if at all, Earle's escape from prison affected tolling; when the cause of action accrued; whether Earle needed to amend his complaint to clarify a claim of municipal liability against the District; and, whether Article 36 of the VCCR creates individually enforceable rights. *Earle*, 298 Fed. App'x at 11.

[6] He also named several other defendants in his amended complaint but the complaint was dismissed as to those defendants for failure to effect service. The District is the only appellee.

recapture. *Earle v. District of Columbia*, No. 1:06-cv-0072, slip op. at 9–13 (D.D.C. June 29, 2011). Earle does not appeal this holding. *See* Br. for Appellant 4–5. Second, it concluded that the District's failure to inform Earle of his VCCR rights was not a continuing violation and therefore his claim "accrued on the day of his arrest—June 13, 1985." *Id.* at 7. Finally, the district court held that Earle was not entitled to equitable tolling of the statute of limitations because the District had not fraudulently concealed any facts material to Earle's claim. *Id.* at 13–15. Earle timely appealed.

II

A.

The district court had subject matter jurisdiction over Earle's section 1983 claim under 28 U.S.C. §§ 1331 and 1343(a)(3). *See Doe v. Metro. Police Dep't of Dist. of Columbia*, 445 F.3d 460, 466 (D.C. Cir. 2006); *Best v. Kelly*, 39 F.3d 328, 330 (D.C. Cir. 1994). We have jurisdiction to review the district's final order under 28 U.S.C. § 1291. "We review a grant of summary judgment de novo." *Hampton v. Vilsack*, 685 F.3d 1096, 1099 (D.C. Cir. 2012). Summary judgment is appropriate only if "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). A "dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In making that determination, the court must 'view the evidence in the light most favorable to the nonmoving party, draw all reasonable inferences in her favor, and eschew making credibility determinations or weighing the evidence.' " *Calhoun v. Johnson*, 632 F.3d 1259, 1261 (D.C. Cir. 2011) (brackets omitted) (quoting *Lathram v. Snow*, 336 F.3d 1085,

1088 (D.C. Cir. 2003)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"In our circuit it is a venerable practice, and one frequently observed, to assume *arguendo* the answer to one question . . . in order to resolve a given case by answering another and equally dispositive one . . . ." *In re Grand Jury Subpoena (Judith Miller)*, 438 F.3d 1141, 1159 (D.C. Cir. 2006) (Henderson, J., concurring). We therefore hasten to make clear which questions we assume, but refrain from deciding, in order to resolve this case. First, we express no opinion on whether the VCCR is a "law[]" within the meaning of section 1983, viz., whether it is either self-executing or the subject of implementing legislation by the Congress. *See Medellin v. Texas*, 552 U.S. 491, 504–05 (2008). Assuming *arguendo* that the VCCR is a "law[]" under section 1983, we express no view on the disagreement amongst our sister circuits over whether Article 36 of the VCCR creates "specific, individually enforceable rights," *Gonzaga Univ. v. Doe*, 536 U.S. 273, 281 (2002), actionable under section 1983. *Compare Gandara v. Bennett*, 528 F.3d 823, 827–29 (11th Cir. 2008) (Article 36 creates no rights enforceable under section 1983), *Mora v. New York*, 524 F.3d 183, 196–97 (2d Cir. 2008) (same), *Cornejo v. Cnty. of San Diego*, 504 F.3d 853, 855 (9th Cir. 2007) (same), *United States v. Emuegbunam*, 268 F.3d 377, 392 (6th Cir. 2001), *and United States v. Jimenez-Nava*, 243 F.3d 192, 198 (5th Cir. 2001), *with Jogi v. Voges*, 480 F.3d 822, 834–36 (7th Cir. 2007) (Article 36 creates rights enforceable under section 1983). Finding Earle's claim barred by the statute of limitations, we reserve these questions for another day.

## B.

The law governing the statute of limitations and claim accrual in a section 1983 case is a complex patchwork of

federal law and state law. To avoid the statute of limitations bar, Earle argues both that, under District law, the statute of limitations was tolled until he discovered his rights and that, under federal law, his claim accrued only upon the District's satisfaction of its disclosure obligations. Before addressing his arguments, we briefly lay out the general framework governing claim accrual and the limitations period applicable in a section 1983 action.

Section 1983 sets no limitations period. Consistent with "settled practice," *Wilson v. Garcia*, 471 U.S. 261, 266 (1985), *abrogated on other grounds as recognized by Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 269 (2004), 42 U.S.C. § 1988(a) adopts the applicable state statute of limitations for a section 1983 action so long as such adoption "is not 'inconsistent with the Constitution and laws of the United States.' " *Burnett v. Grattan*, 468 U.S. 42, 48 (1984) (quoting 42 U.S.C. § 1988(a)). The United States Supreme Court has determined that the appropriate statute of limitations for a claim brought under section 1983 "is that which the State provides for personal-injury torts." *Wallace v. Kato*, 549 U.S. 384, 387 (2007). "[W]here state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions." *Owens v. Okure*, 488 U.S. 235, 249–50 (1989). The District has two statutes of limitations applicable to tort claims: a one-year statute governing enumerated intentional torts, D.C. Code § 12-301(4), and a three-year residual statute covering all other tort actions. *Id.* § 12-301(8). We apply the three-year residual statute of limitations to a section 1983 claim. *Singletary v. District of Columbia*, 351 F.3d 519, 529 n.11 (D.C. Cir. 2003).

A federal court considering a section 1983 claim also applies the tolling rules of the jurisdiction from which it draws

the limitations period so long as those rules are not "inconsistent with the policies underlying § 1983." *Bd. of Regents of Univ. of State of N.Y. v. Tomanio*, 446 U.S. 478, 487 (1980) (quotation marks omitted). This rule applies to both statutory and common law tolling rules. *See id.* at 486–87 (borrowing statutory tolling rules); *Wallace*, 549 U.S. at 394–95 (borrowing common law rules).

Unlike the statute of limitations, "the accrual date of a § 1983 action is a question of federal law that is *not* resolved by reference to state law." *Wallace*, 549 U.S. at 388 (emphasis in original). A section 1983 claim accrues "when the plaintiff has 'a complete and present cause of action,' that is, 'when the plaintiff can file suit and obtain relief.' " *Id.* (quoting *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997)); *see, e.g., Muñoz v. Bd. of Trs. of Univ. of Dist. of Columbia*, 427 Fed. App'x 1, 4 (D.C. Cir. 2011) (per curiam) (section 1983 claim accrues when wrongful conduct occurs).

## C.

We turn first to Earle's accrual argument. Applying the ordinary rule of claim accrual, the district court concluded that, because all of the elements of a cause of action under section 1983 existed on the day Earle was arrested in 1985, his claim accrued upon his arrest. *Earle*, slip op. at 7. Earle argues, however, that the VCCR imposes a continuous obligation to inform him of his consular access rights. A claim for a violation of Article 36(1)(b) did not accrue, Earle reasons, until the obligation was satisfied.[7] Because the District had failed

---

[7] In his brief, Earle did not make clear whether his claim accrues only when the District in fact informs him of his consular access rights or whether it accrues when he learns of them. At oral argument, when pressed on the issue, Earle's able counsel indicated

to discharge its obligation to Earle as of the date he brought suit, his claim had yet to accrue and his suit was therefore timely.[8]

As a general rule, " '[a] claim normally accrues when the factual and legal prerequisites for filing suit are in place.' " *Norwest Bank Minn. Nat'l Ass'n v. FDIC*, 312 F.3d 447, 451 (D.C. Cir. 2002) (quoting *3M Co. v. Browner*, 17 F.3d 1453, 1460 (D.C. Cir. 1994)). We have recognized various exceptions to, and glosses on, the rule, *see, e.g., Connors v. Hallmark & Son Coal Co.*, 935 F.2d 336, 342 (D.C. Cir. 1991) (adopting discovery rule for damages claim involving latent injuries), including the continuing violation doctrine.[9] This doctrine is "muddled," *Thomas v. Eastman Kodak Co.*, 183 F.3d 38, 53 (1st Cir. 1999) (quotation marks omitted), "intricate and somewhat confusing," *Keohane v. United States*, 669 F.3d 325, 329 (D.C. Cir. 2012), and we have never had occasion to apply it to a section 1983 claim. Other courts, however, have done so. *See, e.g., Ayala-Sepúlveda v.*

---

that the duty probably expired when Earle discovered his rights although he declined to concede the point. *Earle v. District of Columbia*, No. 11-7078, Oral Argument Tr. at 13 (D.C. Cir. Oct. 16, 2012).

[8] The district court briefly addressed Earle's continuing violation argument, concluding that even under that theory, Earle's claim accrued, at the latest, on the date of his conviction. *Earle*, slip op. at 8–9.

[9] Courts do not lightly create exceptions to the general rule of claim accrual. On the contrary, the general rule governs "[u]nless Congress has told us otherwise in the legislation at issue." *Bay Area Laundry*, 522 U.S. at 201. Indeed, absent a "clear[] directive" from the Congress, the general rule applies. *AKM LLC dba Volks Constructors v. Sec'y of Labor*, 675 F.3d 752, 757 (D.C. Cir. 2012).

*Municipality of San Germán*, 671 F.3d 24, 30 n.6 (1st Cir. 2012); *Hildebrandt v. Ill. Dep't of Natural Res.*, 347 F.3d 1014, 1036 n.18 (7th Cir. 2003). We need not decide whether the continuing violation doctrine applies to section 1983 claims because Earle does not prevail under this theory, assuming *arguendo* it applies.

Our continuing violation precedent recognizes at least two applications of the doctrine. The first applies to conduct

> that could not reasonably have been expected to be made the subject of a lawsuit when it first occurred because its character as a violation did not become clear until it was repeated during the limitations period, typically because it is only its cumulative impact (as in the case of a hostile work environment) that reveals its illegality.

*Taylor v. FDIC*, 132 F.3d 753, 765 (D.C. Cir. 1997) (citations and quotation marks omitted); *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115–16 (2002) ("cumulative effect of individual acts . . . collectively constitute[s] one unlawful employment practice" (quotation marks omitted)). If such a violation is alleged, the plaintiff may rely on conduct that took place outside the limitations period so long as some conduct on which the claim is based took place within the limitations period. *Singletary*, 351 F.3d at 526–27. The doctrine does not, however, make actionable either a discrete unlawful act or the "lingering effect of an unlawful act." *Felter v. Kempthorne*, 473 F.3d 1255, 1260 (D.C. Cir. 2007) (quotation marks omitted). Moreover, the "mere failure to right a wrong . . . cannot be a continuing wrong . . . for that is the purpose of any lawsuit and the exception would obliterate the rule." *Fitzgerald v. Seamans*, 553 F.2d 220, 230 (D.C. Cir. 1977). This application of the continuing violation doctrine

thus applies if the fact of the violation becomes apparent only by dint of the cumulative effect of repeated conduct. *Keohane*, 669 F.3d at 329.

Here, the District's first alleged violation of Earle's Article 36 rights (its failure to apprise him of his consular access rights on his arrest) was immediately actionable. The subsequent alleged violations did not accumulate to comprise a single, actionable violation. Earle essentially concedes the point, arguing that "the District therefore had a continuing duty to tell Mr. Earle about his right to contact his consulate, and each day it failed to do so was another lost opportunity for Mr. Earle to secure assistance." Br. for Appellant 15. Because the violation does not rest on the cumulative impact of the District's ongoing failure to inform Earle of his consular access rights, this articulation of the doctrine does not apply.

We have occasionally recognized a second application of the continuing violation doctrine if the text of the pertinent law imposes a continuing obligation to act or refrain from acting. "[W]here a . . . statute[ ] imposes a continuing obligation to act, a party can continue to violate it until that obligation is satisfied and the statute of limitations will not begin to run until it does." *See AKM LLC dba Volks Constructors v. Sec'y of Labor*, 675 F.3d 752, 763 (D.C. Cir. 2012) (Garland, J., concurring). Whether the obligation is continuing is a question of statutory construction. In *Postow v. OBA Fed. Sav. & Loan Ass'n*, for example, this court considered the Consumer Credit Protection Act's statute of limitations, which required an action alleging a violation of the Act to be brought within one year of the violation. 627 F.2d 1370, 1379 (D.C. Cir. 1980). The Act required a lender to make certain disclosures to a borrower " 'before the credit is extended.' " *Id.* at 1374 (quoting 15 U.S.C. § 1639(b) (1976)). Although we concluded that a violation of the Act occurred when two borrowers paid a

"stand-by fee" without having obtained the required disclosures, we held the Act imposed a disclosure obligation continuing after the payment of the stand-by fee. *Id.* at 1379–80. A suit brought more than one year after the two plaintiffs paid the stand-by fee was timely so long as it was brought within a year of the date on which the disclosures were made. *Id.* at 1379. We so held because we determined that "the announced goals of the Act" required construing the obligation imposed by section 1639(b) to be a continuing one. *Id.* at 1380; *cf. In re Bluewater Network*, 234 F.3d 1305, 1312–15 (D.C. Cir. 2000) (permitting mandamus action after expiration of limitations period for challenging agency action because statute imposed continuing obligation to act); *In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 548–49 (D.C. Cir. 1999) (same).

Earle contends that the goal of Article 36, which he believes to be the provision of "legal and other assistance [by the] consulate," makes the disclosure obligation of consular access continuing. Br. for Appellant 16. The District, however, contends that the plain language of Article 36(1)(b) requires notification at discrete points in time—arrest, commitment to prison, commitment to custody or any other form of detention—and therefore a claim alleging violation of the obligation accrues at those discrete points. We express no opinion as to the proper construction of the VCCR because assuming *arguendo* that Article 36's notification obligation is continuing, Earle cannot prevail.

A claim alleging a continuing violation accrues "after the date of the last injury," viz., after the defendant's last violative act. *Keohane*, 669 F.3d at 329; *see also Page v. United States*, 729 F.2d 818, 821 (D.C. Cir. 1984). We must first, then, determine who owed Earle the duty to notify him of his consular access rights. Article 36 does not impose a

disclosure obligation on the whole world. Rather, it imposes the obligation on the "competent authorities of the receiving State." VCCR, 21 U.S.T. at 101. While it appears that no court has interpreted the phrase, the United States Department of State has defined "competent authorities" as

> those officials, whether federal, state, or local, who are responsible for legal action affecting the foreign national and who are competent, within their legal authorities, to give the notification required. This interpretation makes sense as a practical matter: compliance with the notification requirements works best when it is assumed by those government officials closest to the foreign national's situation and with direct responsibility for it.

U.S. DEP'T OF STATE, CONSULAR NOTIFICATION AND ACCESS 14 (3d ed. 2010), *available at* http://travel.state.gov/pdf/cna/CNA_Manual_3d_Edition.pdf (NOTIFICATION AND ACCESS). Given the "great weight" we accord the State Department's interpretation of treaties, *Sumitomo Shoji Am., Inc. v. Avagliano*, 457 U.S. 176, 184–85 (1982), we find this common-sense interpretation persuasive and, accordingly, apply it here.

Because it was responsible for his arrest and detention in 1985, we assume that the District was the "competent authorit[y]" obligated to notify Earle of his consular access rights. On September 19, 1988, however, Earle escaped the District's custody. When he escaped, the District was no longer "the government . . . closest to the foreign national's situation." NOTIFICATION AND ACCESS 14. In fact, as he was no longer in any government's custody, there were no "competent authorities" obligated to disclose anything to him. Accordingly, the District's notification duty as a "competent

authorit[y]" ceased at that time. Even assuming Article 36(1)(b)'s notice obligation was ongoing, the day of the last act constituting a violation of the obligation was September 19, 1988, and his claim based on that violation accrued on that day. His 2006 suit against the District was therefore untimely as to that violation.

Earle was subsequently captured by the USMS in 1989. He now argues that he was thereafter transferred back to the District's custody, which transfer triggered a new continuing violation. But he did not allege in his amended complaint that he escaped or was subsequently recaptured (or by whom). He therefore failed to allege a "second" violation of Article 36(1)(b) that began when he was recaptured in 1989. Moreover, Earle raises this "second" violation argument for the first time on appeal. "It is well settled that issues and legal theories not asserted at the District Court level ordinarily will not be heard on appeal." *District of Columbia v. Air Fla., Inc.*, 750 F.2d 1077, 1084 (D.C. Cir. 1984); *see also Breeden v. Novartis Pharm. Corp.*, 646 F.3d 43, 56 (D.C. Cir. 2011) (holding argument raised for first time on appeal forfeited); *Benoit v. U.S. Dep't of Agric.*, 608 F.3d 17, 21 (D.C. Cir. 2010) (same). Although we have discretion to consider such arguments, we exercise that discretion only if "exceptional circumstances" exist. *Flynn v. Comm'r*, 269 F.3d 1064, 1068–69 (D.C. Cir. 2001). Discerning none, we decline to consider Earle's argument.[10]

---

[10] We are further convinced that, even if the District subsequently became the "competent authorit[y]" at some point after Earle's recapture in 1989, Earle's cause of action remains untimely. As the District noted in its brief the Congress ordered the District to close Lorton no later than December 31, 2001. National Capitol Revitalization and Self-Government Improvement Act of 1997, Pub. L. No. 105-33, § 11201(b), (f), 111 Stat. 251, 734. That Act

D.

Earle also contends that the statute of limitations was tolled under the common law doctrine of fraudulent concealment. He argues that the District's failure to notify him of his consular access rights—despite a duty to do so—amounts to a fraudulent concealment of facts relevant to his claim. He thus concludes that the statute of limitations

directed that "the felony population sentenced pursuant to the District of Columbia Code residing at the Lorton Correctional Complex shall be transferred to a penal or correctional facility operated or contracted for by the Bureau of Prisons." *Id.* § 11201(b), 111 Stat. at 734. In so doing, the Congress transferred to the United States responsibility for "custody, care, subsistence, education, treatment and training of" all District prisoners. *Id.* We have previously indicated that this transfer resulted in the District no longer remaining a proper respondent in a habeas corpus petition involving a Lorton prisoner whose parole was previously denied by the District. *See Crawford v. Jackson*, 323 F.3d 123, 125–26 (D.C. Cir. 2003). Moreover, we have heretofore recognized that the District closed Lorton in 2001. *See Fletcher v. Reilly*, 433 F.3d 867, 873 (D.C. Cir. 2006); *see also* Serge F. Kovaleski, *Lorton's Final Lockdown: Last Inmates Leave as 91-Year-Old Facility Completes a Difficult Four-Year Closure*, WASH. POST, Nov. 20, 2001, at B01. Because we may take judicial notice of statutes, *see Pine View Gardens, Inc. v. Mut. of Omaha Ins. Co.*, 485 F.2d 1073, 1075 (D.C. Cir. 1973), as well as facts of record in other proceedings, *see Covad Commc'ns Co. v. Bell Atl. Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005), we may conclude that Earle, a felon, was transferred to the custody of the United States in 2001 pursuant to section 11201(b) of the Revitalization Act. Accordingly, the District ceased to be the "competent authorit[y]" under Article 36(1)(b) when it lost all responsibility for Earle's imprisonment. Nevertheless we do not reach this issue because, as discussed earlier, Earle both failed to allege that his recapture triggered a new continuing violation and raises his second violation argument for the first time on appeal.

was tolled until he discovered his rights in 2004. Because, in a section 1983 action, we apply the tolling rules of "the state in which the cause of action arose," *see Wallace*, 549 U.S. at 387, we look to the law of the District of Columbia for the relevant common law tolling rules. *See Rogers v. Ingersoll-Rand Co.*, 144 F.3d 841, 843 (D.C. Cir. 1998) ("When interpreting the common law of the District of Columbia, we follow the decisions of the District of Columbia Court of Appeals, which is, for *Erie* purposes, treated as if it were the highest court of the state.").

The District of Columbia Court of Appeals (D.C. Court of Appeals) has repeatedly recognized the doctrine of fraudulent concealment. *Drake v. McNair*, 993 A.2d 607, 619 (D.C. 2010) (" 'It is well established that affirmative acts employed by a party to fraudulently conceal either the existence of a claim or facts forming the basis of a cause of action toll the running of limitations periods.' " (quoting *Estate of Chappelle v. Sanders*, 442 A.2d 157, 158 (D.C. 1982)). If a defendant undertakes "something of an affirmative nature designed to prevent discovery of a cause of action," *Cevenini v. Archbishop of Wash.*, 707 A.2d 768, 773–74 (D.C. 1998) (quotation marks and brackets omitted), and the plaintiff by reasonable diligence could not discover the concealed facts, *see Diamond v. Davis*, 680 A.2d 364, 376 (D.C. 1996), the statute of limitations is tolled until the facts are revealed. Silence, however, is insufficient to toll the statute of limitations. *See Adrian v. Am. Sec. & Trust Co.*, 211 A.2d 771, 772 (D.C. 1965). Moreover, "mere failure to disclose pertinent information . . . is not sufficient to toll the statute of limitations unless there has been some affirmative act of concealment." *Drake*, 993 A.2d at 619. But "failure to disclose pertinent information" is all that Earle has asserted.

To avoid this rule, Earle contends that "if a defendant has a duty to disclose information, nondisclosure alone can trigger the tolling." Br. for Appellant 22. Earle points out that in two cases—*Sprint Commc'ns Co. v. FCC*, 76 F.3d 1221 (D.C. Cir. 1996), and *Smith v. Nixon*, 606 F.2d 1183 (D.C. Cir. 1979)—we held that silence in the face of a statutory obligation to disclose tolled the statute of limitations. Although he correctly describes the holdings, *see Sprint Commc'ns Co.* 76 F.3d at 1226–27; *Smith*, 606 F.2d at 1190, he overlooks a crucial distinction: in those cases, we construed *federal* statutes of limitations and therefore applied *federal* tolling rules. Here, we apply the District's statute of limitations and therefore the District's tolling rule.

Because no D.C. Court of Appeals case is directly on point, we "reason by analogy from D.C. cases" to predict how that court would decide the question in a case like this. *Workman v. United Methodist Comm. on Relief*, 320 F.3d 259, 262 (D.C. Cir. 2003); *see also Novak v. Capital Mgmt. & Dev. Corp.*, 452 F.3d 902, 907 (D.C. Cir. 2008) ("Our duty, then, is to achieve the same outcome we believe would result if the District of Columbia Court of Appeals considered this case."). At oral argument, Earle's counsel agreed with the Court's suggestion that the appropriate analogy in this case would be a section 1983 action brought against the District for failure to give a required *Miranda* warning. *See Earle v. District of Columbia*, No. 11-7078, Oral Argument Tr. at 20–23 (D.C. Cir. Oct. 16, 2012). Although neither this court nor the Supreme Court has held that a *Miranda* violation is actionable under section 1983, *see Chavez v. Martinez*, 538 U.S. 760 (2003) (addressing but failing to resolve question), and we do not decide that now, the District Court of Appeals *has* addressed the question. In *Cannon v. District of Columbia*, the plaintiff sought to recover under section 1983 after "he was questioned by police concerning his involvement in a criminal

incident without being given a so-called *Miranda* warning." 569 A.2d 595, 596 (D.C. 1990) (per curiam).  He brought suit well after the expiration of the limitations period but argued that the District's failure to give the *Miranda* warning "constituted fraudulent concealment, thereby tolling the statute of limitations." *Id.*  The court rejected his argument: "[E]ven assuming the police themselves deliberately concealed from appellant his rights at the time they questioned him, he did have an attorney soon thereafter to counsel him as to his rights and to pursue such rights against the government as the circumstances warranted." *Id.* at 597.

*Cannon* points the way here.[11]  We know that Earle was assisted by counsel during his Superior Court trials and we predict that the D.C. Court of Appeals, should it consider this question, would therefore decline to toll the statute of limitations.  Accordingly, because the statute of limitations began to run no later than Earle's escape on September 19, 1988, his 2006 lawsuit is untimely.

For the foregoing reasons, we affirm the judgment of the district court.

*So ordered.*

---

[11] The appellant in *Cannon* raised the argument for the first time on appeal so the District Court of Appeals considered whether there were "exceptional circumstances" permitting it to consider the claim. *Cannon*, 569 A.2d at 596–97.  We do not believe that the waiver issue affects *Cannon*'s merits holding.