Opinion for the court filed by Circuit Judge BROWN.
Concurring opinion filed by Senior Judge EDWARDS.
BROWN, Circuit Judge:
In an industry marked by constant innovation and year-to-year change, the dispute over the regulations in this case has lasted a full decade. DISH Network L.L.C. (“DISH”),[1] is a direct broadcast satellite provider. DISH challenges two orders of the Federal Communications Commission because they impose “encoding rules,” which limit the means of encoding that cable and satellite service providers may employ to prevent unauthorized access to their broadcasts. We conclude the FCC lacked statutory authority to im *299 pose these rules and grant DISH’s petitions for review.
I
Multichannel video programming distributors (“MVPDs”)—a category that includes both cable and satellite television service providers—commonly offer access to their content through navigation devices, such as converter boxes. See 47 C.F.R. § 76.1200(a)-(c). Traditionally, cable television subscribers leased their navigation devices directly from their cable providers. See Gen. Instrument Corp. v. FCC, 213 F.3d 724, 727 (D.C.Cir.2000). But Congress, anxious to create separate markets for navigation devices and cable television services, added § 629 to the Communications Act as part of the Telecommunications Act of 1996. See id. That provision attempts to strike a balance: On the one hand, § 629 directs the FCC to “adopt regulations to assure the commercial availability” of “equipment used by consumers to access [MVP] services ... from [independent] manufacturers, retailers, and other vendors.” 47 U.S.C. § 549(a). At the same time, the regulations must not “jeopardize security of multichannel video programming ... or impede the legal rights of a provider of such services to prevent theft of service.” Id. § 549(b). Achieving this dual mandate demands technical standardization among MVPDs so that navigation devices can be marketed nationally while still proving capable of thwarting unauthorized access to service.
In 2002, with FCC prompting, cable television service providers negotiated with representatives of the consumer electronics industry to arrive at uniform standards that would allow compatibility across all cable systems. In particular, the FCC sought standards enabling “plug and play,” which would allow consumers to connect digital television receivers directly to their cable systems, thus circumventing the need for an external navigation device. The negotiations resulted in a memorandum of understanding (“MOU”)—a set of joint recommendations to the FCC—including rules prescribing what distributors could encode within their programming streams, and banning “selectable output control,” which allows distributors and content providers to remotely shut off a connector or output on a program-by-program basis (e.g., preventing a subscriber from recording a certain television program). The agreement was contingent on application of the encoding rules to all MVPDs, not just cable television service providers.
The FCC issued a notice of proposed rulemaking in January 2003 soliciting comment on the MOU’s proposed rules. During the comment period, various satellite carriers criticized the proposed application of the encoding rules to all MVPDs. They both complained that satellite carriers were excluded from the negotiations that gave rise to the MOU and also characterized imposition of the encoding rules on all MVPDs as a quid pro quo for cable service providers’ acquiescence to plug-and-play standards. The FCC nevertheless adopted the proposed rules with only minor changes in Implementation of Section 301 of the Telecommunications Act of 1996, Second Report and Order, 18 FCC Red. 20885 (2003) (“Order”). As the MOU recommended, the Order’s encoding rules barred selectable output control. The adopted encoding rules also addressed two related issues: prohibiting down-resolution of broadcast programming—which involves streaming content at an intentionally degraded resolution quality—and limiting the level of copy protection encoding applicable to certain categories of programming. In the FCC’s view, applying the encoding *300 rules only to the cable industry “would create a permanent competitive imbalance,” whereas “[u]niform application of the proposed encoding caps serves the dual function of providing a competitive baseline for MVPDs while ensuring that consumers have equal access to content regardless of their service provider.” Order ¶ 71, 18 FCC Red. at 20916. Reaffirming its “stated goal ... to strike a measured balance between the rights of content owners and the home viewing expectations of consumers, while ensuring competitive parity among MVPDs,” the FCC later revised the encoding rules to clarify their application to encrypted and unencrypted broadcast programming. See Implementation of Section 304 of the Telecommunications Act of 1996, Order on Reconsideration, 18 FCC Red. 27059, 27059-60 (2003) (“Reconsideration Order”).
DISH now petitions for review of the Order and the Reconsideration Order.
II
DISH argues the FCC’s decision to apply the encoding rules to all MVPDs exceeded the agency’s statutory authority. Because we agree the FCC lacked the power to impose the encoding rules on all MVPDs, we need not reach DISH’s alternate contention that the decision was arbitrary and capricious. But first we must satisfy ourselves of our jurisdiction to review DISH’s challenge.
A
As a threshold matter, the FCC insists § 405 of the Communications Act bars review of DISH’s claim that the agency was without authority to apply encoding rules to all MVPDs. Section 405 bars judicial review of questions upon which the Commission, or its designated authority, has been afforded no opportunity to pass unless a party first files a petition for reconsideration. 47 U.S.C. § 405(a). The question, then, is whether the FCC had an opportunity to consider DISH’s challenge to its authority to promulgate the encoding rules.
Because § 405 is phrased in the passive voice, whether the FCC “has been afforded [an] opportunity to pass” on an argument does not depend on whether DISH raised it. See Time Warner Entm’t Co., L.P. v. FCC, 144 F.3d 75, 79 (D.C.Cir.1998). Absolute precision is unnecessary; judicial review is permitted so long as “the issue is necessarily implicated by the argument made to the Commission.” Id. at 80.
The Order’s discussion of the FCC’s authority satisfies us that § 405’s requirements have been met. See Order ¶¶ 45-47, 55-57, 18 FCC Red. at 20905-10. In justifying the encoding rules, the FCC invoked both explicit and ancillary authority under § 629 of the Communications Act, as well as ancillary authority under § 624A of the Act, which covers “[cjonsumer electronics equipment compatibility.” 47 U.S.C. § 544a. This was no cursory reference; the FCC devoted several pages of the Order to discussing the statutory basis of its authority to promulgate encoding rules regulating all MVPDs. Even if no other party brought the matter to the agency’s attention, the FCC’s independent contemplation of the issue satisfies § 405’s mandate. See DIRECTV, Inc. v. FCC, 110 F.3d 816, 825 (D.C.Cir.1997). We thus proceed to the merits of DISH’s claim.
B
The FCC cites three sources for its authority: § 629’s mandate that the FCC “adopt regulations to assure the commercial availability ... of converter boxes, interactive communications equipment, and other equipment used by consumers to access multichannel video programming,” *301 47 U.S.C. § 549(a); authority ancillary to § 629; and authority ancillary to § 624A, which permits the FCC “to restrict cable systems in the manner in which they encrypt or scramble signals” to assure “compatibility between televisions and video cassette recorders and cable systems,” 47 U.S.C. § 544a(b). None is availing.
Section 629 provides no direct authority for the encoding rules, but deference to the FCC’s view of § 629’s meaning is appropriate so long as “Congress has not directly addressed the precise question at issue” and the FCC’s interpretation is “reasonable.” Chevron U.S.A., Inc. v. NRDC, 467 U.S. 837, 843-44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).[2] Here, the FCC’s reading founders on Chevron’s second step: though § 629’s directive to “adopt regulations to assure the commercial availability” of navigation devices may afford the FCC some wiggle room in crafting its regulatory regime, the statute’s language is not as capacious as the agency suggests.
Certainly, § 629 provides no explicit textual basis for the encoding rules, instead authorizing “regulations to assure the commercial availability” of navigation devices. 47 U.S.C. § 549(a). But the FCC points out the encoding rules fulfill “consumers’ expectations that their digital televisions and other equipment will work to their full capabilities.” Order ¶ 60, 18 FCC Red. at 20911; see also id. ¶ 64, 18 FCC Red. at 20913 (invoking the same argument to support restriction of down-resolution); id. ¶ 68, 18 FCC Red. at 20915 (doing the same with respect to copy protection limits). Consumer satisfaction enhances consumer demand, ensuring a viable commercial market. However, as the FCC acknowledges, the encoding rules are not necessary to sustain a commercial market for direct broadcast satellite devices. In fact, the FCC concluded “differences in the marketplace for [direct broadcast satellite] equipment, where devices are available at retail and offer consumers a choice, as compared to equipment for other MVPD services, particularly cable operators, [justified] not applying” other § 629 rules to satellite service providers. Implementation of Section 304 of the Telecommunications Act of 1996, Report and Order, 13 FCC Red. 14775, 14800 (1998). And, as the Order itself recognizes, satellite equipment is “already available at retail” and “portable nationwide.” Order ¶ 46, 18 FCC Red. at 20905. Applying the encoding rules to cable providers may meet consumer expectations with respect to the market for cable devices, but that is no reason to impose these rules on all MVPDs.
As an alternative justification, the FCC also reasoned that the encoding rules “are an essential component of the MOU,” and that the MOU “will assure the commercial availability of navigation devices.” Id. ¶ 47, 18 FCC Red. at 20906. But this cannot be enough to tether the encoding rules to § 629. The FCC cannot simply impose any regulation stipulated in an MOU as a means of promoting the commercial availability of navigation devices, no matter how tenuous its actual connection to § 629’s mandate. To read § 629 in this way would leave the FCC’s regulatory power unbridled—so long as the agency claimed to be working to make navigation devices commercially available. Nor does *302 the FCC adhere to the view that rigid imposition of the encoding rules is essential to making navigation devices commercially available. Otherwise, it would not have permitted partial waiver, at the behest of the Motion Picture Association of America, of the ban on selectable output control. See Motion Picture Association of America, Petition for Expedited Special Relief; Petition for Waiver of the Commission’s Prohibition on the Use of Selectable Output Control (17 C.F.R. § 76.1903), Memorandum Opinion and Order, 25 FCC Red. 4799 (2010).
We next turn to the FCC’s assertion of its ancillary jurisdiction under both § 629 and § 624A, which, under certain circumstances, extends the agency’s regulatory powers beyond express statutory mandates. Under § 4(i) of the Communications Act of 1934, the FCC is authorized to “perform any and all acts, make such rules and regulations, and issue such orders, not inconsistent with this chapter, as may be necessary in the execution of its functions,” 47 U.S.C. § 154(i); see United States v. Sw. Cable Co., 392 U.S. 157, 178, 88 S.Ct. 1994, 20 L.Ed.2d 1001 (1968); United States v. Midwest Video Corp. (“Midwest Video I ”), 406 U.S. 649, 669-70, 92 S.Ct. 1860, 32 L.Ed.2d 390 (1972) (plurality opinion); FCC v. Midwest Video Corp. (Midwest Video II”), 440 U.S. 689, 708-09, 99 S.Ct. 1435, 59 L.Ed.2d 692 (1979). We have summarized the doctrine in a two-part test: the FCC may invoke its ancillary jurisdiction only when “(1) the Commission’s general jurisdictional grant under Title I [of the Communications Act] covers the regulated subject and (2) the regulations are reasonably ancillary to the Commission’s effective performance of its statutorily mandated responsibilities.” Am. Library Ass’n v. FCC, 406 F.3d 689, 691-92 (D.C.Cir.2005). Neither side disputes that the encoding rules, through their application to cable and satellite broadcasts, qualify as regulations of “radio and wire communication service” under Title I. At issue instead is whether the encoding rules were reasonably ancillary to the FCC’s effective execution of its duties under either § 629 or § 624A.[3]
The FCC contends the encoding rules are reasonably ancillary to its mission of assuring the commercial availability of navigation devices because they removed one of the “stumbling blocks” to the consumer electronics industry’s production of such equipment for retail: the “inability of industry to agree on a comprehensive set of technical copy protection measures and corresponding encoding rules” that would “ensure the availability of high value content to consumers in a protected digital environment.” Order ¶ 55, 18 FCC Red. at 20909. Yet by this standard, there is little the FCC could not regulate in the name of fulfilling § 629’s mandate. Could cable providers have stipulated that their adoption of the MOU was premised on FCC restrictions on satellite providers’ content offerings? Could they have demanded the FCC limit the number of channels satellite providers might broadcast in high definition? Under the FCC’s view, its ancillary jurisdiction is effectively plenary. The FCC is not authorized under § 629 to take any *303 action that lessens the competitive pressures posed by satellite providers in order to induce cable operators to ratify an MOU the agency favors. Guided by the principle that ancillary jurisdiction is not “unrestrained authority,” Midwest Video II, 440 U.S. at 706, 99 S.Ct. 1435, we refuse to interpret ancillary authority as a proxy for omnibus powers limited only by the FCC’s creativity in linking its regulatory actions to the goal of commercial availability of navigation devices. See also Ry. Labor Execs. Ass’n v. Nat’l Mediation Bd., 29 F.3d 655, 671 (D.C.Cir.1994) (en banc) (“Were courts to presume a delegation of power absent an express withholding of such power, agencies would enjoy virtually limitless hegemony, a result plainly out of keeping -with Chevron and quite likely with the Constitution as well.”). The FCC’s ancillary jurisdiction may be broad, but it is not unbounded.
The encoding rules fare no better under § 624A. Unlike § 629, § 624A actually discusses encoding of the sort addressed by the Order. See 47 U.S.C. § 544a(a)(l). But whereas § 629 applies to all MVPDs, § 624A’s reach is limited by its plain language to cable systems, directing the FCC to adopt regulations “as are necessary to assure ... compatibility” between cable systems on the one hand and televisions and video cassette recorders on the other.[4] 47 U.S.C. § 544a(b)(l). By invoking its ancillary authority in conjunction with § 624A’s compatibility mandate, the FCC seeks to square this circle.
The FCC is powerless to wield its ancillary jurisdiction, however, where “there are strong indications that agency flexibility was to be sharply delimited.” Midwest Video II, 440 U.S. at 708, 99 S.Ct. 1435. Section 624A’s textual delegation of authority to regulate cable systems, as opposed to all MVPDs, is precisely such an indication. True, application of the expressio unius est exclusio alterius canon[5] is not robotic. But its use is appropriate when “one can be confident that a normal draftsman when he expressed ‘the one thing1 would have likely considered the alternatives that are arguably precluded.” Shook v. D.C. Fin. Responsibility & Mgmt. Assistance Auth., 132 F.3d 775, 782 (D.C.Cir.1998). Here, there is every reason to believe § 624A was directed at cable systems alone. The provision was enacted as part of the Cable Television Consumer Protection and Competition Act of 1992 (“Cable Act”), which also amended the Communications Act to include the term “multichannel video programming distributor,” defining it to include “direct broadcast satellite service.” Pub.L. No. 102-385, sec. 2(c)(6), § 602(c)(12), 106 Stat. 1460, 1463 (codified as amended at 47 U.S.C. § 522(c)(13)). In fact, one of the Cable Act’s stated goals was “to increase the availability of satellite cable programming and satellite broadcast programming.” Cable Act, sec. 19, § 628, 106 Stat. at 1494 (codified at 47 U.S.C. § 547). Clearly, Congress was adept at using the terms “satellite” and “multichannel video programming distributor” when it so chose. In contrast to cable television technology in Southwestern Cable, satellite *304 television was not some new phenomenon Congress had no opportunity to contemplate when enacting § 624A. See 392 U.S. at 172-78, 88 S.Ct. 1994. It is one thing for the FCC to invoke its ancillary authority in furtherance of express congressional directives. But it is quite another when the FCC invokes its ancillary jurisdiction to override Congress’s clearly expressed will.
Nor is the position espoused by the National Cable and Telecommunications Association (“NCTA”), acting as intervenor, persuasive. The NCTA adopts a more circumspect view of the FCC’s authority, acknowledging the obvious implausibility of interpreting § 629 as empowering the FCC to take any action it deems useful in its quest to make navigation devices commercially available. Instead, the NCTA suggests that § 629 sweeps all MVPDs, not just cable providers, under the ambit of § 624A: “If Section 629 means anything, it means that the Commission now has authority to apply to all MVPDs the same encoding rules that both DISH and the Commission agree the Commission could independently impose on cable operators under Section 624A.” The NCTA’s theory of the interplay between the two statutes is novel—perhaps because it ignores § 629(f), which cautions, “Nothing in this section shall be construed as expanding or limiting any authority that the Commission may have under law in effect before” enactment of the Telecommunications Act of 1996. 47 U.S.C. § 549(f). The NCTA interprets § 629 to mean the exact opposite.
In the end, we are left with two provisions, neither of which authorizes the encoding rules at issue. Section 629’s text provides no direct authority for the encoding rules, and the FCC’s arguments in favor of such an interpretation are unconvincing. Section 624A addresses encoding, but only in the context of cable systems. The FCC’s application of encoding rules to all MVPDs was therefore ultra vires.
III
Because the FCC denies that the challenged orders could operate absent the encoding rules—indeed, its argument is premised on this very notion—the encoding rules are not severable. See MD/DC/DE Broadcasters Ass’n v. FCC, 236 F.3d 13, 22 (D.C.Cir.2001) (“Whether the offending portion of a regulation is severable depends upon the intent of the agency and upon whether the remainder of the regulation could function sensibly without the stricken provision.”). In granting DISH’s petitions for review, we therefore vacate the Order and Reconsideration Order in their entirety.
IV
For the foregoing reasons, the petitions for review are

Granted.

. DISH formerly did business as EchoStar Satellite L.L.C.

. Whether application of Chevron in this context is sensible is an entirely different matter. See AKM LLC d/b/a Volks Constructors v. Sec’y of Labor, 675 F.3d 752, 766 (D.C.Cir.2012) (Brown, J., concurring). The Supreme Court recently granted certiorari to address this issue. See City of Arlington, Tex. v. FCC, - U.S. -, 133 S.Ct. 524, 184 L.Ed.2d 252 (2012) (mem.).

. We note that the FCC’s interpretation of the reach of its ancillary jurisdiction is owed no deference, since Chevron only applies in instances in which Congress has delegated an agency authority to regulate the area at issue. See United States v. Mead Corp., 533 U.S. 218, 226-27, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001). Since we conclude Congress did not empower the FCC to apply the encoding rules to all MVPDs, deferring to the FCC’s own assertion of its authority on this point would beg the question. See Am. Library Ass’n, 406 F.3d at 699.

. We set aside for now whether § 624A’s reference to "video cassette recorders,” now a largely antiquated technology, is adequate to sustain the FCC's purported interest in the ability of consumers to retain "the full benefits of ... the functionality” of their recording devices. Order ¶ 56, 18 FCC Red. at 20910.

. "A canon of construction holding that to express or include one thing implies the exclusion of the other, or of the alternative.” Black's Law Dictionary 661 (9th ed.2009).