Opinion dissenting in part and concurring in the judgment in part filed by Senior Circuit Judge RANDOLPH.
GINSBURG, Senior Circuit Judge:
Plaintiff Antoine Jones appeals the district court’s order dismissing his Bivens and § 1983[1] claims against individual agents of the Federal Bureau of Investigation and a Metropolitan Police Department detective arising out of a search of his *78 home and his coinciding arrest in 2005.[1] For the following reasons, we affirm in part and reverse in part the order of the district court, and remand this matter to that court for further proceedings.
I. Background
During the course of a narcotics investigation, a federal magistrate judge in the District of Maryland signed a warrant to search Antoine Jones’s home. The magistrate struck language in the warrant form that would have permitted its execution without time restrictions, causing the warrant to read, in relevant part:
YOU ARE HEREBY COMMANDED to search ... the ... place named above ... serving this warrant and making the search (in the daytime — 6:00 A.M. to 10:00 P.M.)(-at-any-time in the- day or night as I — find—reasonable cause has been established-).[2]
According to the allegations in Jones’s complaint, at 4:45 AM on October 24, 2005, one MPD detective and 11 FBI agents executed the search warrant and arrested Jones at gunpoint in his bedroom. Jones v. Kirchner, 66 F.Supp.3d 237, 241 (D.D.C. 2014). During the course of the search, the officers seized 30 to 40 boxes of personal property. Id. Although Jones does not allege specifically what the boxes contained,[3] he does allege the “Defendants found no evidence of any crime at the [home],” and that the seizure therefore “unlawfully exceeded the scope of the warrant.” Jones also alleges the officers broke into and entered his home “using an unauthorized key to gain entry,” “without knocking and announcing” their presence, and without the justification of “exigent circumstances.”
Jones has been incarcerated since his arrest. His first trial resulted in a hung jury and a mistrial. He was convicted after his second trial and sentenced to life in prison, but we overturned his conviction after concluding the Fourth Amendment prevented law enforcement officers from installing a GPS tracking device on Jones’s car without a warrant and using it to monitor his movements for 28 days. United States v. Maynard, 615 F.3d 544 (D.C. Cir. 2010), aff'd sub nom United States v. Jones, — U.S. -, 132 S.Ct. 945, 181 L.Ed.2d 911 (2012). Jones’s third trial resulted in another hung jury, after which he pleaded guilty and was sentenced to 15 years in prison.
In this case, Jones alleges, among other things, that the failure of the police to knock and announce before entering, their seizure of the property contained in the boxes, and their nighttime execution of the search violated his rights under the Fourth Amendment to the Constitution of the United States. See Am. Compl. ¶¶ 57-61. Jones sought damages from the FBI agents pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), and from tlie MPD officer pursuant to 42 U.S.C. § 1983. The *79 Defendants filed a motion to dismiss the case pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, which motion the district court granted in full. Jones, 66 F.Supp.3d 237.
The district court held that under the standard set forth in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), Jones had failed to “plead sufficient facts to raise his allegations” of a knoek-and-announce violation and an unlawful seizure “from possibility to plausibility! [sic]” Id. at 245. Specifically, because the complaint asserted Jones was upstairs at the time of the entry, the district court said it “may infer that Mr. Jones did not hear a knock and announce, but no more.” Id. With respect to the seizure, the district court held the allegation was conclusory because the complaint “does not identify what property was seized, describe the scope of the [attached] warrant, nor allege how the seized items exceeded that scope.” Id. at 246. The district court also held the Defendants were entitled to qualified immunity for their nighttime execution of the search warrant. Jones timely appealed.
II. Analysis
“We review de novo the district court’s Rule 12(b)(6) dismissal” of Jones’s claims, accepting all well-pleaded factual allegations of the complaint as true and drawing in Jones’s favor all reasonable inferences from those allegations. Banneker Ventures, LLC v. Graham, 798 F.3d 1119, 1128-29 (D.C. Cir. 2015).
A. Plausibility of Allegations
The Fourth Amendment requires law enforcement officers, before entering the premises to be searched, to announce their presence and provide residents an opportunity to open the door, see Wilson v. Arkansas, 514 U.S. 927, 931-32, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995), except under exigent circumstances, see Hudson v. Michigan, 547 U.S. 586, 589-90, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006). The Amendment also requires that warrants “particularly describ[e] the place to be searched, and the persons or things to be seized,” which operates to “prevent[ ] the seizure of one thing under a warrant describing another.” Marron v. United States, 275 U.S. 192, 195-96, 48 S.Ct. 74, 72 L.Ed. 231 (1927).
Jones’s complaint alleges the Defendants violated both these limitations. A complaint must contain “sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.” Iqbal, 556 U.S. at 678, 129 S.Ct. 1937 (internal quotations omitted). As required by Federal Rule of Civil Procedure 8, the pleadings must “give the defendants fair notice of what the claim is and the grounds upon which it rests,” Twombly, 550 U.S. at 555, 127 S.Ct. 1955 (internal quotations and alterations omitted), but the Rule “does not require detailed factual allegations,” Iqbal, 556 U.S. at 678, 129 S.Ct. 1937 (internal quotations omitted). The amended complaint easily meets these minimum requirements. Taking Jones’s allegations as true for the purpose of passing upon a motion to dismiss, see Twombly, 550 U.S. at 555, 127 S.Ct. 1955, he has made a prima facie showing the Defendants violated the Fourth Amendment.
Jones can try to prove the knock- and-announce violation by testifying that he did not hear a knock. If the Defendants did, in fact, knock, then they can so testify to refute Jones’s claim. The task of resolving the conflicting accounts would fall to the finder of fact — -judge or jury — who could decide how much weight to assign Jones’s testimony after considering all rel *80 evant evidence, such as the distance between the bedroom and the front door and the volume of the alleged knock. Credibility determinations aré not for the district court, especially at the motion to dismiss stage, before evidence is available and before the Defendants have even denied the allegations against them. See Howard v. Office of Chief Admin. Officer of U.S. House of Representatives, 720 F.3d 939, 950 (D.C. Cir. 2013) (explaining that, at the motion to dismiss stage, the “court must assess the legal feasibility of the complaint, but may not weigh the evidence that might be offered to support it”) (internal quotations and brackets omitted); Neitzke v. Williams, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) (“Rule 12(b)(6) does not countenance ... dismissals based on a judge’s disbelief of a complaint’s factual allegations”); Iqbal, 556 U.S. at 678, 129 S.Ct. 1937 (The “plausibility standard is not akin to a probability requirement”) (internal quotations omitted).[4]
Jones’s allegation of unlawful seizure is also plausible. Maybe all of the items in the 30 or more seized boxes fell within the scope of the search warrant, specified in Attachment A, Doc. No. 619-6 in Jones, 05-cr-386 (May 22, 2012). Maybe some or all of the items did not. The district court will ultimately make that determination. Cf. United States v. Geraldo, 271 F.3d 1112, 1118 (D.C. Cir. 2001). But Rule 8, which provides a complainant must make “a short and plain statement of the claim showing that the pleader is entitled to relief,” did not require Jones, before discovery, to identify each seized item and document and to show that each fell outside the scope of the warrant.
B. Statute of Limitations
There is no federal limitations period or tolling rule for actions brought under § 1983, so 42 U.S.C. § 1988, a companion statute that governs the rules of decision applicable to civil rights claims, directs federal courts to look to state law to fill the gap. See Wilson v. Garcia, 471 U.S. 261, 266-68, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985); see also Hardin v. Straub, 490 U.S. 536, 539, 109 S.Ct. 1998, 104 L.Ed.2d 582 (1989) (applying state rule tolling the limitations period for inmates in a § 1983 action); Earle v. District of Columbia, 707 F.3d 299, 305 (D.C. Cir. 2012) (applying the D.C. statute of limitations in a § 1983 action brought in D.C.); Doe v. U.S. Dep’t of Justice, 753 F.2d 1092, 1114 (D.C. Cir. 1985) (applying the D.C. statute of limitations in a Bivens action brought in D.C.). The Defendants argue we should apply Maryland’s three-year statute of limitations because it is the state in which the search took place. The search occurred in 2005, so the limitations period would have lapsed by the time Jones filed his complaint in 2012.
We do not apply Maryland law in this case, however. Where federal law is silent, § 1988 provides, “the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction ... is held” shall govern unless application of the state law would be inconsistent with the laws of the *81 United States, (emphasis added). See also Burnett v. Grattan, 468 U.S. 42, 47-48, 104 S.Ct. 2924, 82 L.Ed.2d 36 (1984) (explaining that, if no federal rule governs a claim asserted under the Civil Rights Acts, then courts are to consider application of the laws “of the forum state”). Because the District of Columbia is the forum “state” in this case, pursuant to § 1988, we look to District law for the applicable statute of limitations.
Quoting Wallace v. Kato, 549 U.S. 384, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007), the Defendants argue we must look to “the law of the State in which the cause of action arose,” but that dictum does not direct us to a different result. Id. at 387, 127 S.Ct. 1091. In Wallace, the Supreme Court held that federal law, rather than state law, determines the accrual date of a § 1983 cause of action; which state’s statute of. limitations would have applied was not disputed.[5] In fact, until 2009 no court had ever considered “which statute of limitations is appropriate when the constitutional tort occurred in a state other than the forum of the litigation,” Malone v. Corrections Corp. of America, 553 F.3d 540, 542 (7th Cir. 2009). In Malone the court imported the forum state’s choice-of-law rules to determine which statute of limitations the forum state would apply. 553 F.3d at 542. This approach makes good sense because a state’s “statute[ ] of limitations cannot be divorced from the [other] associated rules that determine how long a plaintiff has to commence suit.” Id. at 542. Consulting the “D.C. choice-of-law rules, we see that they treat statutes of limitations as procedural, and therefore [ordinarily] mandate application of the District’s own statute of limitations.” A.I. Trade Fin., Inc. v. Petra Int’l Banking Corp., 62 F.3d 1454, 1458 (D.C. Cir. 1995).
Like Maryland, D.C. has a three-year statute of limitations for personal injury actions such as this. See Earle, 707 F.3d at 305 (citing D.C. Code § 12-301(8)). Unlike Maryland, however, the District tolls the statute of limitations for causes of action that accrue while a plaintiff is imprisoned, beginning at the time of his or her arrest. District of Columbia v. Tinker, 691 A.2d 57, 64 (D.C. 1997) (citing D.C. Code § 12-302(a)(3)). Tolling stops when the plaintiff is released, but Jones has been imprisoned since his arrest in 2005.[6]
The Defendants nevertheless argue that tolling does not apply because the alleged knock-and-announce violation occurred immediately prior to Jones’s arrest. If the Council of the District of Columbia did not require Jones to file his lawsuit from his jail cell, however, then it surely did not expect him to draft, file, and serve a complaint in the moments between the *82 officers’ entry into his home and his arrest. In Rose v. Washington Times Co., 23 F.2d 993 (1928), the D.C. Court of Appeals interpreted an earlier statute that tolled a cause of action for libel during imprisonment. It explained:
There can be no doubt that the word imprisonment is used in this section in its plain, ordinary meaning. Imprisonment is the act of putting or confining a man in prison; the restraint of a man’s personal liberty; coercion exercised upon a person to prevent the free exercise of his powers of locomotion.
Id. at 994 (quoting Hyde v. Nelson, 287 Mo. 130, 229 S.W. 200, 201 (1921)). From the moment the Defendants entered Jones’s home, he was not free to leave. Although he had not yet been handcuffed or given Miranda warnings, his liberty was sufficiently restrained that he was ‘imprisoned’ for purposes of § 12-302(a)(3). The statute of limitations therefore has not yet begun to run on Jones’s § 1983 or Bivens[7] claims.
C. Issue Preclusion
The Defendants argue Jones is collaterally estopped from litigating the legality of the search and seizure because he raised these issues during the criminal proceeding as part of his motion to suppress. They also argue Jones’s claims are barred by Heck v. Humphrey, in which the Supreme Court held a § 1983 complaint must be dismissed if a favorable judgment would necessarily impugn the validity of a prior conviction, unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). We reject both arguments.
1. Collateral Estoppel
Citing Allen v. McCurry, the Defendants contend Jones’s claims are barred because they had already been resolved by the district judge on Jones’s motion to suppress. See 449 U.S. 90, 105, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) (Section 1983 claim for unlawful search barred by issue preclusion because the validity of the search had already been resolved in denying the motion to suppress). “[AJmong the most critical guarantees of fairness in applying collateral estoppel,” however, “is the guarantee that the party to be es-topped had not only a full and fair opportunity but an adequate incentive to litigate to the hilt the issues in question.” Prosise v. Haring, 667 F.2d 1133, 1141 (4th Cir. 1981), affirmed 462 U.S. 306, 103 S.Ct. 2368, 76 L.Ed.2d 595 (1983); see generally Restatement (Second) of Judgments (§§ 27-29 (1982)). Unlike the defendant in McCurry, Jones had little incentive to pursue further his motion to suppress because, whatever its merits, the remedy for the alleged constitutional violations at issue in this case probably would not have been suppression of the evidence seized at his home. See Hudson, 547 U.S. at 593, 126 S.Ct. 2159 (rejecting suppression as a remedy when the causal connection between the discovery of the tainted evidence and the constitutional violation — in that case, failure to knock and announce — is remote). *83 Collateral estoppel therefore does not apply-
Our dissenting colleague argues that Jones is barred from alleging the time of entry was 4:45 AM because on the motion to suppress, the district judge found the officers had entered after 6:00 AM. There are three problems with that argument. First, the Defendants never mention the factual finding that so animates the Dissent; after spending much of their brief arguing that the search as alleged would not have been unlawful, the Defendants said only that, “[h]aving litigated th[is] claim[] unsuccessfully in the criminal proceeding as part of a motion to suppress, Jones cannot now re-litigate [it] in a civil proceeding.” Defs.’ Br. 41. That will not do. “We apply forfeiture to unar-ticulated [legal and] evidentiary theories not only because judges are not like pigs, hunting for truffles buried in briefs or the record, but also because such a rule ensures fairness to both parties.” Estate of Parsons v. Palestinian Auth., 651 F.3d 118, 137 (D.C. Cir. 2011) (internal citations and quotations omitted).
Second, Jones had no more incentive to appeal that finding than to appeal the conclusion that nighttime entry was not unlawful. As we have already explained, the remedy for the alleged violation likely would not have been suppression. Furthermore, any purported incentive to appeal the suppression ruling, as Jones points out, would have been negated by Jones’s subsequent guilty plea, which rested at least in part upon evidence that was not seized from his home. See Reply Br. 25-26.
Third, collateral estoppel is particularly inappropriate because the factual finding was not necessary to the district court’s decision denying the motion. See Trial Transcript at 4, Doc. No. 70 in Jones, 05-cr-386 (Feb. 19, 2013) (“I’ve already ruled five times it’s legally irrelevant. And I still stand by that. But to the extent I need to make findings of fact, I find that this search was executed after 6”); see generally San Remo Hotel, L.P. v. City & Cnty. of San Francisco, 545 U.S. 323, 336 n.16, 125 S.Ct. 2491, 162 L.Ed.2d 315 (2005) (explaining that collateral estoppel applies only to “an issue of fact or law necessary to [the court’s] judgment”) (emphasis added).[8]
Evanson v. United States, 84 F.3d 1452 (D.C. Cir. 1995), aff'g 878 F.Supp. 1 (D.D.C. 1995), upon which the Dissent (at 91-92) relies, is an unpublished summary affirmance that has nothing to do with case at hand. The alleged constitutional violations in Evanson were very different: they concerned whether the officers’ entry was consensual and whether 'the arrest was supported by probable cause. But even if the allegations had been identical, Evanson would have had an incentive to appeal because the Supreme Court had not yet decided Hudson. Further, the district court in Evanson noted multiple times that an issue must be “necessary” to a judgment for estoppel to apply. 878 F.Supp. at 3. As we have explained, that was not the case here.
*84 2. Heck v. Humphrey
Heck v. Humphrey is no bar to Jones’s claims. Jones’s first conviction was vacated. Maynard, 615 F.3d at 549. His current conviction rests upon his guilty plea, and “when a defendant is convicted pursuant to his guilty plea rather than a trial, the validity of that conviction cannot be affected by [his proving] an alleged Fourth Amendment violation because the conviction does not rest in any way on evidence that may have been improperly seized.” Prosise, 462 U.S. at 321, 103 S.Ct. 2368. Further, because the remedy for the alleged violations likely would not have been suppression, a favorable ruling in this civil suit would not necessarily impugn Jones’s conviction even if he had not pled guilty. See Heck, 512 U.S. at 487 n.7, 114 S.Ct. 2364 (“Because of doctrines like ... harmless error, ... a § 1983 action, even if successful, would not necessarily imply that the plaintiffs conviction was unlawful”).
D. Qualified Immunity for the Timing of the Search
The district court dismissed Jones’s, claim regarding the execution of the search warrant at 4:45 AM on the ground that the officers are entitled to qualified immunity, the doctrine that “protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.” Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (internal quotation marks omitted). Qualified immunity depends upon the answers to two questions: (1) Did the officer’s conduct violate a constitutional or statutory right? If so, (2) was that right clearly established at the time of the violation? Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). A right is “clearly established” if precedent from a controlling authority or “a robust consensus of cases of persuasive authority” put the constitutional question beyond debate. Ashcroft v. al-Kidd, 563 U.S. 731, 742, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011). In this case, the district court held that there was no Fourth Amendment violation because the “Fourth Amendment does not per se prohibit nighttime searches,” 66 F.Supp.3d at 246 (citing Youngbey v. March, 676 F.3d 1114, 1124 (D.C. Cir. 2012)), and that, in any event, Jones “cites to no cases in the Supreme Court or [the D.C.] Circuit clearly establishing that entry under the circumstances alleged” here was unconstitutional, id.
The district court erred in holding there was no constitutional violation. Jones does not allege the timing of the search was unlawful merely because it took place at night; he alleges it was unlawful because it violated an express limitation on the face of the warrant.
The Fourth Amendment “guarantees ... the absolute right to be free from unreasonable searches and seizures.” Bivens, 403 U.S. at 392, 91 S.Ct. 1999. The search of a home is presumptively unreasonable unless authorized by a warrant, Brigham City, Utah v. Stuart, 547 U.S. 398, 403, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006), which must be issued by a neutral judicial officer, see Johnson v. United States, 333 U.S. 10, 13-14, 68 S.Ct. 367, 92 L.Ed. 436 (1948). Unlike rules of criminal procedure and other sub-constitutional bodies of law, violations of which may be unlawful but are not necessarily unconstitutional, see Virginia v. Moore, 553 U.S. 164, 176, 128 S.Ct. 1598, 170 L.Ed.2d 559 (2008) (“[W]hile States are free to regulate ... arrests however they desire, state restrictions do not alter the Fourth Amendment’s protections”), compliance with the limitations of a warrant is *85 required by the Constitution itself, Bivens, 403 U.S. at 394-95 n.7, 91 S.Ct. 1999 (“[T]he Fourth Amendment confines an officer executing a search warrant strictly within the bounds set by the warrant”).
In this case the magistrate, as clearly indicated on the face of the warrant, affirmatively denied the Defendants permission to search Jones’s house before 6:00 AM. The plaintiff alleges the Defendants nonetheless executed the warrant at 4:45 AM. Just as a warrant is “dead,” and a search undertaken pursuant to that warrant invalid, after the expiration date on the warrant, Sgro v. United States, 287 U.S. 206, 212, 53 S.Ct. 138, 77 L.Ed. 260 (1932), a warrant is not yet alive, and a search is likewise invalid, if executed before the time authorized in the warrant. If the Defendants executed the warrant when the magistrate said they could not, then they exceeded the authorization of the warrant and, accordingly, violated the Fourth Amendment.[9]
In holding the alleged nighttime entry violated the Fourth Amendment, we reject the Defendants’ argument that 21 U.S.C. §879 overrode the time restrictions imposed by the magistrate. That statute, which governs searches for evidence of drug crimes, provides that a warrant “may be served at any time of the day or night if the judge or United States magistrate judge issuing the warrant is satisfied that there is probable cause to believe that grounds exist for the warrant and for its service at such time.” Unlike Federal Rule of Criminal Procedure 41, which governs most searches and requires an officer to demonstrate “good cause” before a magistrate can authorize a nighttime search, § 879 “requires no special showing for a nighttime search” beyond probable cause for the warrant itself. Gooding v. United States, 416 U.S. 430, 458, 94 S.Ct. 1780, 40 L.Ed.2d 250 (1974). Although this and other courts have held a warrant issued pursuant to § 879 that is silent as to time may permissibly be executed at night, see, e.g., United States v. Burch, 156 F.3d 1315, 1325 (D.C. Cir'. 1998), nothing in the text of § 879 suggests it limits a magistrate’s discretion to place restrictions upon a search.
Indeed, a statute purporting to restrict the power of a court to define the limits of a reasonable search would raise a serious constitutional question. Cf. Dickerson v. United States, 530 U.S. 428, 437, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000) (“Congress may not legislatively supersede our decisions interpreting and applying the Constitution”).[10] We need not resolve that question here, however, because regardless whether the magistrate should have permitted a nighttime search in this case, he did not. The warrant requirement “provides the detached scrutiny of a neutral magistrate, which is a more reliable safeguard against improper searches than the hurried judgment of a law enforcement officer engaged in the often competitive *86 enterprise of ferreting out crime.” United States v. Leon, 468 U.S. 897, 913-14, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) (internal quotations omitted). If the executing officers believed the daytime-only limitation was an improvident limitation or, as in United States v. Katoa, 379 F.3d 1203 (10th Cir. 2004), a mere drafting error, then they had other options, including telephoning the magistrate to authorize nighttime service, as the officers did in Katoa. See also United States v. Voustianiouk, 685 F.3d 206, 216 (2d Cir. 2012) (explaining that a search of a second-floor apartment violated the Fourth Amendment where the warrant authorized a search of the first-floor apartment only and the officers “could have called a magistrate judge on the telephone” on the morning of the search after discovering the suspect resided on the second floor). Simply ignoring the timing limitation was not among the choices lawfully available to the officers in this case.
Nevertheless, we agree with the district court that the Defendants are entitled to qualified immunity, albeit for a different reason: It was not clearly established in Maryland in 2005 that the Fourth Amendment prohibits the nighttime execution of a daytime-only warrant. Although two of our sister circuits had by then so held, see O’Rourke v. City of Norman, 875 F.2d 1465 (10th Cir. 1989); United States v. Merritt, 293 F.2d 742 (3d Cir. 1961), the Fourth Circuit, within which this search occurred, did not come to the same conclusion until after the search in this case. See Yanez-Marquez v. Lynch, 789 F.3d 434, 466 (2015). Indeed, as the Fourth Circuit noted in that case, an unpublished Fourth Circuit opinion from 2009 had treated “a nighttime search under the aegis of a daytime warrant as a mere Rule 41 violation, rather than as an unconstitutional search.” Id. at 467 (discussing United States v. Davis, 313 Fed.Appx. 672 (4th Cir.2009)). To repeat, qualified immunity shields an officer from liability unless he reasonably should have known his conduct would violate the law. See Pearson, 555 U.S. at 231, 129 S.Ct. 808. If our learned colleagues on the Fourth Circuit believed as recently as 2009 that the nighttime execution of a daytime-only warrant is not a constitutional violation, then the police officers who work in that jurisdiction cannot be faulted for failing to appreciate in 2005 that their conduct was unconstitutional.
Until 2009 the Supreme Court “required courts considering qualified immunity claims to first address the constitutional question, so as to promote ‘the law’s elaboration from case to case.’ ” Camreta v. Greene, 563 U.S. 692, 707, 131 S.Ct. 2020, 179 L.Ed.2d 1118 (2011) (emphasis omitted) (quoting Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)).[11] Today, which part of the qualified immunity analysis to address first is within the “sound discretion” of the court. Pearson, 555 U.S. at 236, 129 S.Ct. 808. Where “it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right,” it may make sense to avoid the constitutional question. Id. at 237, 129 S.Ct. 808. This is not such a case, however. It seems to us an *87 unremarkable proposition that an officer must respect a time limitation imposed by a magistrate and, indeed, the three other circuits to consider the question reached the same conclusion. In light of the Government’s argument to the contrary, see Defs.’ Br. 36, we think it important to clarify this point of law.
Since Pearson, our court has often granted qualified immunity without reaching the constitutional question, but both the constitutional question and the answer are more clear in this case than in any of those. Here we need only follow the teaching of the Supreme Court, as have three other circuits, in order to protect the public from a particular type of unreasonable search. One of those circuits — the Fourth — surrounds the District of Columbia on all sides, and officers from Maryland and Virginia frequently cooperate with officers from D.C. on investigations. Resolving the constitutional question here ensures that officers will take care to abide by a magistrate’s limitations regardless where in the Washington area the search is executed.
Conservation of judicial resources, see Dissent at 95, is a risible justification for avoiding a straightforward question such as this, cf. Pearson, 555 U.S. at 236, 129 S.Ct. 808 (“there are cases in which there would be little if any conservation of judicial resources to be had by beginning and ending with a discussion of the ‘clearly established’ prong”), especially in view of the dramatic reduction in the caseload per judge of our court in recent years. Nor is doubt about the actual time of entry a relevant consideration in this case. That the facts of the case are as yet unsettled is neither surprising nor unique; this appeal is from the grant of a pre-answer motion to dismiss. There is nothing improper about deciding a constitutional question at this stage. Cf. al-Kidd, 563 U.S. at 734, 131 S.Ct. 2074. Indeed, we ordinarily decide questions of qualified immunity early in order to avoid burdening officers with protracted litigation, see Pearson, 555 U.S. at 232, 129 S.Ct. 808; under our dissenting colleague’s approach, in contrast, we would never reach a constitutional question as long as the defendant’s attorney remembered to raisé qualified immunity as a defense. Although well-founded doubt about the veracity of a plaintiffs factual allegations might steer us toward constitutional avoidance in some circumstances (e.g., where the plaintiffs account of the facts on summary judgment is “utterly discredited by the clear [video] evidence,” Lash v. Lemke, 786 F.3d 1, 6 (D.C. Cir. 2015)), those circumstances are not present here, where the Defendants have not submitted contrary evidence nor even filed an answer denying Jones’s allegations.[12]
As the Supreme Court has warned, perpetually addressing only the clearly-established question “may frustrate the development of constitutional precedent and the promotion of law-abiding behavior.” Camreta, 563 U.S. at 706, 131 S.Ct. 2020 (internal quotations omitted). We see no need to avoid the constitutional question here.
III. Conclusion
We affirm the district court’s holding that the Defendants have qualified immunity for the timing of the search, reverse its dismissal of Jones’s claims for unlawful seizure and no-knock entry, and remand *88 this matter for further proceedings consistent with this opinion.

So ordered.

Appendix A
[[Image here]]
*89 [[Image here]]

. The district court also dismissed additional claims against these and other defendants arising out of their search of an apartment and a warehouse owned by Jones and for attaching a GPS tracking device to his car, all without warrants. Jones does not appeal those rulings.'

. The warrant and warrant return are reproduced as an Appendix to this opinion.

.Jones received a warrant receipt listing what was taken from his home, but the descriptions are vague. See Warrant Return, Doc. No. 619-7 in United States v. Jones, No. 05-cr-386 (D.D.C. May 22, 2012). For example, Box # 22 is described as containing "Personal Papers in the name of A. Jones and Deniece Jones.” Box # 16, meanwhile; is simply labelled "Misc. documents from Room H, large bureau.”

. The Defendants also argue the knock-and-announce allegation must be dismissed because it is asserted against the officers collectively "for an alleged omission ... by whoever was first to enter the residence.” This is a frivolous argument. First, the order of entry is a fact unknowable by the plaintiff before discovery. Second, the defendants offer no authority holding or even suggesting that only the first officer to enter is liable for a knock- and-announce violation, nor any justification for deviating from the rule that "a jointly committed ... tort may result in joint liability on the part of the tort-feasors.” Knell v. Feltman, 174 F.2d 662, 663 n.1 (D.C. Cir. 1949).

. Indeed, even if Wallace were controlling, it would still not be clear that the phrase "the State in which the cause of action arose” refers in this case to Maryland rather than to D.C. Other courts have cited Wallace for the proposition that “[cjlaims under § 1983 are governed by the forum state’s statute of limitations,” e.g., Myers v. Koopman, 738 F.3d 1190, 1194 n.2 (10th Cir. 2013), an interpretation probably attributable to the courts' imprecise usage of the phrase in § 1983 cases, cf. Haggard v. Stevens, 683 F.3d 714, 719 (6th Cir. 2012) (Clay, J., concurring).

. Contrary to our dissenting colleague’s contention, see Dissent at 94 n.5, the pursuit of a uniform limitations period is not a valid reason to ignore the clear text of § 1988 and instead import a federal limitations period. ”[T]he ‘state-borrowing doctrine' may not be lightly abandoned,” Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350, 357, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991), particularly in a federal civil rights case, where the Supreme Court plainly envisions that different state legislatures will reasonably implement different statutes of limitations and tolling rules, see Hardin, 490 U.S. at 543-44, 109 S.Ct. 1998.

. Although our limitations analysis focuses upon the § 1983 claims, the Bivens claims are governed by the same statute of limitations. Bieneman v. City of Chi., 864 F.2d 463, 469 (7th Cir. 1988) ("Actions under § 1983 and those under [Bivens] are identical save for the replacement of a state actor (§ 1983) by a federal actor {Bivens). No wonder the only ... courts of appeals that have addressed questions concerning limitations under Bivens have held that the rules used for § 1983 suits will be applied in full force to Bivens cases"); Sanchez v. United States, 49 F.3d 1329, 1330 (8th Cir. 1995); Van Strum v. Lawn, 940 F.2d 406, 409 (9th Cir. 1991); Chin v. Bowen, 833 F.2d 21, 23-34 (2d Cir. 1987); McSureley v. Hutchison, 823 F.2d 1002, 1004-05 (6th Cir. 1987).

. We do not hold, as the Dissent claims, that neither of two alternative bases for a holding can estop a party from re-litigating an issue in a future action. We simply note that, where a district court has explicitly characterized a factual finding as "legally irrelevant,” it is fair to say that particular finding was not “necessary” to the court's judgment. Cf. Halpern v. Schwartz, 426 F.2d 102, 105 (2d Cir. 1970) ("It is well established that although an issue was fully litigated and a finding on the issue was made in the prior litigation, the prior judgment will not foreclose reconsideration of the same issue if that issue was not necessary to the rendering of the prior judgment, and hence was incidental, collateral, or immaterial to that judgment").

. Our dissenting colleague says that when a “state warrant authorized only a daytime search but the officers executed the warrant at night,” courts have held there is no Fourth Amendment violation. Dissent at 14 n. 7 (emphasis added) (citations omitted). That mis-characterizes the cases. In each one, the warrant itself was silent as to timing; any time restrictions derived from a state statute or rule of criminal procedure, which are not incorporated by the Fourth Amendment.

. Our dissenting colleague contends that Rule 41(a)(2)(B) and (e)(2) impose just such restrictions. They do not. The rules merely prevent a magistrate from authorizing a search that fails to meet certain minimum requirements; they do not purport to require a magistrate to authorize a search he has otherwise deemed unreasonable.

. Our resolution of the constitutional question, although not necessary to the grant of qualified immunity, is “not mere dictum in the ordinary sense.” Bunting v. Mellen, 541 U.S. 1019, 1023, 124 S.Ct. 1750, 158 L.Ed.2d 636 (2004) (Scalia, J., dissenting from denial of certiorari). Such rulings "have a significant future effect on the conduct of public officials ... and the policies of the government units to which they belong. And more: they are rulings self-consciously designed to produce this effect, by establishing controlling law and preventing invocations of immunity in later cases.” Camreta, 563 U.S. at 704-05, 131 S.Ct. 2020 (internal quotations and citations omitted).

. Had they wanted to do so at this early stage of the litigation, the defendants could have submitted affidavits denying that they entered the plaintiff's home before 6:00 a.’m. Rule 12(d) allows a party to convert a motion to dismiss into one for summary judgment by submitting extrinsic materials with the motion. See also Kim v. United States, 632 F.3d 713, 719 (D.C. Cir. 2011).

. On page 85 of the majority opinion there is, as an aside, the statement that a statute restricting a federal court’s definition of the limits of a reasonable search "would raise a serious constitutional question.” This ill-considered dictum is troublesome. Rule 41(a)(2)(B) and (e)(2), for example, restrict the discretion of magistrates to determine the limits of a reasonable search, with the federal rules defining night and day without regard to seasons or time zones. The notion that those provisions might be unconstitutional strikes me as far-fetched.