# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

**No. 24-5293**           **September Term, 2025**

FILED ON: DECEMBER 15, 2025

LAUREATUS GROUP, LLC, A NEVADA LIMITED LIABILITY COMPANY,
         APPELLANT

v.

UNITED STATES DEPARTMENT OF THE TREASURY, ET AL.,
         APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:22-cv-02103)

———

Before: SRINIVASAN, *Chief Judge*, and HENDERSON and GARCIA, *Circuit Judges*

## J U D G M E N T

This appeal was considered on the record from the United States District Court for the District of Columbia and on the briefs of the parties. *See* Fed. R. App. P. 34(a)(2); D.C. Cir. R. 34(j). The court has afforded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. Cir. R. 36(d). For the reasons stated below, it is:

**ORDERED** and **ADJUDGED** that the order of the district court issued on December 2, 2024, granting appellees' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and denying leave to file a second amended complaint be **AFFIRMED**.

\*     \*     \*

This appeal involves a claim against the United States for $700 billion. The plaintiff, Laureatus Group, LLC (Laureatus), alleged that the federal government froze a $700 billion transfer and then unlawfully confiscated the funds. The district court dismissed Laureatus's first amended complaint and denied it leave to file a second amended complaint because Laureatus had acquired its claim from another corporation in violation of the Anti-Assignment Act. Because Laureatus's claims are wholly fictitious, we affirm.

# I.

We take the following allegations from Laureatus's second amended complaint and the attached exhibits. In July 2004, Merchants International Holding Ltd. (Merchants), an entity incorporated with the Oglala Sioux Tribe, successfully solicited a $2.1 trillion investment. The benefactor was one "Mr. Wu," a wealthy Taiwanese citizen. App. 205. To effect the investment, Wu attempted to wire $700 billion from the Bank of Taiwan to a bank in the United States. The federal government, however, froze the transfer. Then, "[f]or some unknown reason, the[] Funds simply disappeared." App. 211.

From that moment on, Merchants began a years-long search to recover the funds. The search implicated high-ranking officials from five presidential administrations, members of the Congress and a diverse collection of other characters, including Jerry Falwell, Liberty University's former president.

To aid the search, Merchants incorporated an entity in Nevada—Laureatus Group, LLC—on the advice of George H.W. Bush. Bush believed that Merchants' ties to the Oglala Sioux might impede it from recovering the funds. For that reason, Merchants transferred its claims and assets to Laureatus and unwound its operations, ceasing to exist. Although the entities did not formally merge, they shared the same principal owners and managers so that, in effect, Merchants "simply changed the business entity" by which it operated. App. 247.

Picking up where Merchants left off, Laureatus regularly spoke with government officials to try to settle the claim. These discussions took place, Laureatus said, from the time that the funds disappeared in 2004 until 2022. In 2007, for example, a retired intelligence agent reported that an undersecretary for the U.S. Department of the Treasury (Treasury) was willing to settle the claim on Treasury's behalf. The parties drew up a settlement agreement, which sat waiting at Treasury, but an ice storm kept Treasury from signing the agreement and delivering it to Laureatus. Before the parties could finalize the agreement, the undersecretary resigned.

This was not the only time that a late-breaking development prevented the parties from settling. While on the telephone with the White House to settle the claim, Falwell died from cardiac arrhythmia. Then, in 2008, associates of Tony Podesta and John Ashcroft abandoned a settlement meeting at the last minute, claiming that they needed to prepare for President Obama's inauguration. And in 2010, Treasury officials told Laureatus that Treasury had created a bank account to transfer the funds but the credentials those officials gave Laureatus did not work.

The same pattern—negotiation, progress and failure to settle—held until 2022. Then, Laureatus determined that President Biden did not intend to settle the claim and that its only recourse was to sue. On July 18, 2022, Laureatus sued in federal district court. It sued Treasury, the Secretary of Treasury, the Attorney General, the United States, the clearing companies that had assisted the transfer and twenty-five John Does responsible for confiscating the funds. It claimed that the defendants had violated its Fifth Amendment rights to due process and equal protection and its Fourth Amendment right to be free from unreasonable seizures. It also claimed that

2

Treasury's refusal to return the funds constituted agency action unlawfully withheld or unreasonably delayed and was arbitrary and capricious under the Administrative Procedure Act, 5 U.S.C. § 706. It sued the United States for conversion under the Federal Tort Claims Act, 28 U.S.C. § 1346. And it sued the John Doe defendants for violating the Fourth Amendment under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

The defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of standing and under Rule 12(b)(6) because the statute of limitations had run about twelve years earlier. The court granted the defendants' motion, dismissing the complaint on statute-of-limitations grounds. It did, however, grant Laureatus leave to amend its complaint, which Laureatus obliged.

After the defendants moved to dismiss the first amended complaint, Laureatus requested leave to file a second amended complaint. In the second amended complaint, Laureatus maintained that it possessed standing and that the statute of limitations should be tolled. The district court again granted the defendants' motion to dismiss, this time on the ground that Laureatus lacked standing. And it denied Laureatus's motion to file a second amended complaint for futility. It determined that Laureatus's new factual allegations failed to remedy the deficiencies in its first amended complaint, concluding that Laureatus's second amended complaint could not survive a motion to dismiss.

Laureatus timely appealed.

## II.

"[W]here, as here, a district court denies leave to amend because the amended complaint would not survive a motion to dismiss, our review is *de novo*." *L. Xia v. Tillerson*, 865 F.3d 643, 649 (D.C. Cir. 2017) (citation omitted). In other words, our review "is, for practical purposes, identical to review of a Rule 12(b)(6) dismissal based on the allegations in the amended complaint." *In re Interbank Funding Corp. Sec. Litig.*, 629 F.3d 213, 215–16 (D.C. Cir. 2010) (quotation omitted).

Under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation modified). Although "Rule 12(b)(6) does not countenance dismissals based on a judge's disbelief of a complaint's factual allegations," *Jones v. Kirchner*, 835 F.3d 74, 80 (D.C. Cir. 2016) (citation modified), a court may dismiss a claim that is "patently insubstantial," *Neitzke v. Williams*, 490 U.S. 319, 327 n.6 (1989), or "essentially fictitious," *Hagans v. Lavine*, 415 U.S. 528, 537 (1974) (quotation omitted), for lack of subject-matter jurisdiction under Rule 12(b)(1). Examples of essentially fictitious claims include those resting on "bizarre conspiracy theories," "fantastic government manipulations of the[] will or mind" or "supernatural intervention." *Best v. Kelly*, 39 F.3d 328, 330 (D.C. Cir. 1994). The common thread among these claims is that they "rest[] on truly fanciful *factual* allegations." *Ord v. District of Columbia*, 587 F.3d 1136, 1144 (D.C. Cir. 2009) (citation modified).

3

Laureatus's claims are wholly fictitious. In short, Laureatus alleges that government officials confiscated a third of the $2.1 trillion investment that it solicited from Wu but then spent eighteen years toiling to ensure that Laureatus received the funds that it had confiscated. Laureatus does not explain why high-ranking officials in five presidential administrations devoted their time and effort to returning the funds. Nor does it explain why Wu chose Merchants, an entity with no other assets, to receive and invest his $2.1 trillion gift. Similarly unexplained is why Treasury needed *Russia*'s permission to settle the claim. Laureatus's allegations—encompassing a years-long government conspiracy of bizarre origin and motive—are in line with many cases that courts have dismissed for lack of jurisdiction. *Tooley v. Napolitano*, 586 F.3d 1006, 1009–10 (D.C. Cir. 2009) (collecting cases). Because Laureatus's claims are fictitious, we lack jurisdiction to resolve them. *Best*, 39 F.3d at 331. The district court's decision is affirmed.

Finally, we leave to the district court whether to sanction Laureatus's counsel for the plainly groundless complaints they filed. *Geller v. Randi*, 40 F.3d 1300, 1304 (D.C. Cir. 1994) ("Rule 11 expressly authorizes sanctions for groundless complaints . . . ."). The district court expended significant time and attention on Laureatus's initial and amended complaints, issuing two thorough decisions that totaled nearly fifty pages and that required it to analyze more than 200 pages of allegations and exhibits. An appropriate sanction may deter counsel from causing a waste of judicial resources in the future. *See In re Kunstler*, 914 F.2d 505, 522 (4th Cir. 1990).

\* \* \*

This disposition is unpublished. We direct the Clerk to withhold issuance of the mandate until seven days after the resolution of any timely petition for rehearing or rehearing en banc. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41.

**<u>Per Curiam</u>**

**FOR THE COURT:**
Clifton B. Cislak, Clerk

BY: /s/
Daniel J. Reidy
Deputy Clerk

4